Carey Dean MOORE, Appellee,

v.

Harold W. CLARKE, Appellant.

Carey Dean MOORE, Appellant,

v.

Harold W. CLARKE, Appellee.

Nos. 88–2584, 88–2679.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1989.

Decided May 25, 1990.

William L. Howland, Lincoln, Neb., for appellant.

Alan E. Peterson, Lincoln, Neb., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The Warden of the Nebraska State Penitentiary appeals from the district court's[1] order granting a writ of habeas corpus to Carey Dean Moore. Moore was convicted on two counts of first-degree murder and sentenced to death on each count after the sentencing panel applied the Nebraska statute dealing with aggravating and mitigating circumstances, Neb.Rev.Stat. § 29–2523 (Reissue 1985). Nebraska statute permits the sentencing panel to consider, in determining if the death penalty should be applied, whether the murder

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

"manifested exceptional depravity by ordinary standards of morality and intelligence." *Id.* § 29–2523(1)(d). The district court, adopting the Report and Recommendation of the United States Magistrate,[2] held that this statutory provision was unconstitutionally vague as written and as construed by the Nebraska Supreme Court. While this is a difficult issue requiring careful consideration, we are satisfied that the district judge correctly analyzed the constitutionality of this statutory aggravating circumstance and, therefore, we affirm the order granting the writ of habeas corpus.

Carey Dean Moore was charged with two counts of first-degree murder stemming from the deaths of two cab drivers in August 1979. Both murders were committed in the perpetration, or the attempted perpetration, of a robbery. Moore waived his right to a trial by jury and was found guilty on both counts by the state trial court. A panel of three judges, including the trial judge, held a sentencing hearing and, pursuant to section 29–2523,[3] determined that the following aggravating circumstances existed: (1) Moore had a "substantial history of serious assaultive or terrorizing criminal activity" in regard to the second murder because it followed only four days after the first murder; (2) Moore committed both murders "in an apparent effort … to conceal the identity of the perpetrator;" and (3) the murders "manifested exceptional depravity by ordinary standards of morality and intelligence." *See* Neb.Rev.Stat. § 29–2523(1)(a), (b), and (d).

The sentencing panel then discussed each of the statutory mitigating circumstances recognized by section 29–2523(2) and found none to exist in Moore's case. The panel also considered whether nonstatutory mitigating circumstances existed and specifically focused on Moore's family background. The panel acknowledged that Moore's childhood had been disadvantaged and that his family background was entitled to consideration as a mitigating factor; the panel nevertheless decided that this mitigating factor did not outweigh the aggravating circumstances found to exist beyond a reasonable doubt in Moore's case.

The sentencing panel then analyzed "[w]hether the sentence of death is excessive or disproportionate to the penalty im-

---

2. The Honorable David L. Piester, United States Magistrate for the District of Nebraska.

3. This statute provides:

> The aggravating and mitigating circumstances referred to in sections 29–2521 and 29–2522 shall be as follows:
> (1) Aggravating Circumstances:
> (a) The offender was previously *convicted* of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity;
> (b) The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime;
> (c) The murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant;
> (d) The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence;
> (e) At the time the murder was committed, the offender also committed another murder;
> (f) The offender knowingly created a great risk of death to at least several persons;
> (g) The victim was a law enforcement officer or a public servant having custody of the offender or another; or
> (h) The crime was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws.
> (2) Mitigating Circumstances:
> (a) The offender has no significant history of prior criminal activity;
> (b) The offender acted under unusual pressures or influences or under the domination of another person;
> (c) The crime was committed while the offender was under the influence of extreme mental or emotional disturbance;
> (d) The age of the defendant at the time of the crime;
> (e) The offender was an accomplice in the crime committed by another person and his participation was relatively minor;
> (f) The victim was a participant in the defendant's conduct or consented to the act; or
> (g) At the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication.
> Neb.Rev.Stat. § 29–2523.

posed in similar cases," as required by section 29–2522(3). The panel found that sentencing Moore to death was neither excessive, nor disproportionate, to the sentences imposed in similar cases, and therefore sentenced him to death on both counts of murder.

The convictions and sentence were affirmed by the Supreme Court of Nebraska. *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982). The United States Supreme Court denied certiorari in *Moore v. Nebraska*, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). The state trial court denied Moore's motion to vacate his conviction filed pursuant to the Nebraska Postconviction Proceedings Act, Neb.Rev.Stat. §§ 29–3001 to –3004 (Reissue 1985). The denial was affirmed by the Supreme Court of Nebraska, *State v. Moore*, 217 Neb. 609, 350 N.W.2d 14 (1984), which also denied Moore's request for a rehearing.

Moore then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1982). The United States Magistrate recommended that Moore's petition for a writ of habeas corpus be granted with respect to his claim that the "exceptional depravity" language of section 29–2523 was unconstitutionally vague. The magistrate denied Moore's remaining claims, and recommended that Moore be resentenced to life imprisonment unless the State initiated capital resentencing proceedings within a reasonable time after judgment became final. Since the Nebraska death penalty statute requires that aggravating and mitigating circumstances be weighed against each other, Neb.Rev.Stat. § 29–2522, and the Nebraska Supreme Court does not apply a harmless error analysis in cases where an aggravating circumstance is found to have been invalidly applied,[4] Moore's sentence would have to be vacated for new sentencing proceedings.

The district court adopted the analysis and conclusions of the magistrate. It held that the "exceptional depravity" language was unconstitutionally vague but denied all other claims. Accordingly, the court granted the writ of habeas corpus. This appeal followed.

### I.

■ The sole issue raised by the State in this appeal is whether the phrase "manifested exceptional depravity by ordinary standards of morality and intelligence," contained in section 29–2523(1)(d), is unconstitutionally vague as written and construed by the Supreme Court of Nebraska. In the seminal case on this issue, *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (per curiam), the Supreme Court held that standardless discretion vested in a sentencing body considering the death penalty violated the Eighth and Fourteenth Amendments of the Constitution. *Id.* at 239–40, 92 S.Ct. at 2727. "*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). It "is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Godfrey v. Georgia*, 446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980) (quoting *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977)).

### A.

The Supreme Court of Nebraska, in affirming Moore's death penalty, discussed in detail the statutory provision being challenged here, which reads:

> The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence. . . .

---

4. *State v. Bird Head,* 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Jones,* 213 Neb. 1, 328 N.W.2d 166 (1982).

Neb.Rev.Stat. § 29–2523(1)(d). The court stated that this aggravating circumstance "describes in the disjunctive two separate circumstances which may operate in conjunction with or independent of one another." *Moore*, 210 Neb. at 470, 316 N.W.2d at 41. The court agreed with the sentencing panel that the first circumstance, that the murder was especially heinous, atrocious, or cruel, did not exist in this case. *Id.* The court then discussed the second circumstance as follows:

> The second circumstance pertains to the state of mind of the actor. In *State v. Stewart*, [197 Neb. 497, 250 N.W.2d 849 (1977)], we said the second instance indicates a situation "where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence" ... and in *State v. Holtan*, 197 Neb. 544, 250 N.W.2d 876 (1977), it indicates a state of mind "totally and senselessly bereft of any regard for human life".... The sentencing panel found the second circumstance did apply. We agree that the following circumstances exhibit a state of mind exceptionally depraved and totally and senselessly bereft of regard for human life: (1) The murders here were coldly planned as a part of the robberies. (2) The evidence clearly supports the conclusion that the murders were to be repetitive, i.e., the defendant intended to continue on his selected course of conduct so long as his needs required. (3) The victims were selected on the basis of certain characteristics which made it easier for the defendant to shoot them, namely, their ages. His unstated conclusion was that a human life in the middle years is less valuable than a younger life.

*Id.* at 470–71, 316 N.W.2d at 41. Thus, the sentencing panel based Moore's death penalty, in part, upon a finding of "exceptional depravity," referring to the defendant's state of mind, and this was affirmed by the Nebraska Supreme Court.

Moore argues that the "exceptional depravity" language is unconstitutionally vague in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the due process clause of the Fourteenth Amendment. The district court found this language to be facially unconstitutional [5] because it offered nothing objective as an "inherent restraint on the arbitrary and capricious infliction of the death sentence," *Godfrey*, 446 U.S. at 428, 100 S.Ct. at 1765, and was not "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action," *Gregg*, 428 U.S. at 189, 96 S.Ct. at 2932.

We agree with the district court's conclusion that the text of the statute, standing alone, is not constitutionally sufficient. Our examination, however, must extend beyond this conclusion because a state supreme court may salvage a facially-vague statute by construing it to provide the sentencing body with objective criteria for applying the statute. *See Godfrey*, 446 U.S. at 423, 100 S.Ct. at 1762; *Gregg*, 428 U.S. at 201, 96 S.Ct. at 2938. Thus, our task here is to determine whether the Supreme Court of Nebraska has construed the "exceptional depravity" language in a manner which directs and limits the discretion of the sentencing body "so as to minimize the risk of wholly arbitrary and capricious action," *id.* at 189, 96 S.Ct. at 2932, and provides a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not," *id.* at 188, 96 S.Ct. at 2932 (quoting *Furman*, 408 U.S. at 313, 92 S.Ct. at 2764 (White, J., concurring)).

The Nebraska Supreme Court construed the challenged language in several opinions before the sentencing panel sentenced Moore to death in 1980. The district court identified three phrases which may be gleaned from these opinions evidencing the Nebraska Supreme Court's attempt to limit the application of the vague phrase to with-

---

**5.** The district court had concluded earlier that this statute was unconstitutional, *see Holtan v. Black*, CV84–L–393, unpublished memorandum of decision, 1986 WL 12479 (D.Neb. Nov. 5,

1986), *vacated on other grounds*, 838 F.2d 984 (8th Cir.1988), and repeated its conclusion in the *Moore* decision.

in constitutional confines. In these various cases, the Nebraska Supreme Court has held that "exceptional depravity" means:

(1) "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life," *State v. Harper*, 208 Neb. 568, 579, 304 N.W.2d 663, 668 (1981), *cert. denied*, 454 U.S. 882 [102 S.Ct. 368, 70 L.Ed.2d 194 (1981); *State v. Rust*, 197 Neb. 528, 539, 250 N.W.2d 867, 874 (1977), *cert. denied*, 434 U.S. 912 [98 S.Ct. 313, 54 L.Ed.2d 198] (1977); *accord State v. Holtan*, 197 Neb. 544, 547, 250 N.W.2d 876, 880 (1977), *cert. denied sub nom.* 434 U.S. 912 [98 S.Ct. 313, 54 L.Ed.2d 198 (1977); *State v. Stewart*, 197 Neb. 497, 522–23, 250 N.W.2d 849, 864 (1977);

(2) "unresisting victims," *Holtan*, 197 Neb. at 547, 250 N.W.2d at 880; *accord State v. Peery*, 199 Neb. 656, 675, 261 N.W.2d 95, 104–05 (1977), *cert. denied*, 439 U.S. 882 [99 S.Ct. 220, 58 L.Ed.2d 194] (1978); and

(3) "exceptional," *State v. Simants*, 197 Neb. 549, 566, 250 N.W.2d 881, 891 (1977), *cert. denied*, 434 U.S. 878 [98 S.Ct. 231, 54 L.Ed.2d 158] (1977).

These three phrases were the sole guidance provided by the Supreme Court of Nebraska to the sentencing panel in its task of determining whether the murders committed by Moore "manifested exceptional depravity by ordinary standards of morality and intelligence." In its sentencing order, the panel actually employed only the "so coldly calculated" language in discussing the circumstances found to be aggravating.

Following Moore's sentencing, the Supreme Court of Nebraska further discussed the challenged language in *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). In *Palmer*, the court adopted a five-factor test to determine whether "exceptional depravity" existed, stating:

Therefore, for the purpose of [applying] § 29–2523(1)(d) as an aggravating circumstance in determining whether the death penalty may be imposed, we hold that "exceptional depravity" in a murder exists when it is shown, beyond a reasonable doubt, that the following circumstances, either separately or collectively, exist in reference to a first degree murder: (1) apparent relishing of the murder by the killer; (2) infliction of gratuitous violence on the victim; (3) needless mutilation of the victim; (4) senselessness of the crime; or (5) helplessness of the victim.

224 Neb. at 320, 399 N.W.2d at 731–32.

### B.

Upon closer examination of this judicial precedent, we conclude that the district court did not err in holding that the Supreme Court of Nebraska has failed to provide the guidance necessary to sentencing bodies to cure the constitutional deficiencies of this vaguely-worded statute.

As the district court noted, the phrase "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life" offers little, if any, objective guidance. We agree with the district court's statement that, although "cold planning" has an "aura of objectivity" about it, when it is considered in combination with the "absence of regard for human life" language, the phrase in its entirety calls for subjective consideration.

The phrase "exceptional," which modifies "depravity" in the challenged statute, is equally unhelpful to a sentencing body seeking objective standards to guide its discretion. "Exceptional" carries vagueness and subjectivity to the same extent as "especially," a standard rejected by the Supreme Court when examining an Oklahoma aggravating circumstances statute similar to the one in issue here. In *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the Court declared that the language "especially heinous, atrocious, or cruel" gave insufficient guidance to the sentencing body and focused on the deficiencies of the adjective "especially":

The State's contention that the addition of the word "especially" somehow guides the [sentencing body's] discretion, even if the term "heinous" does not, is unten-

able. To say that something is "especially heinous" merely suggests that the [sentencing body] should determine that the murder is more than just "heinous," whatever that means, and an ordinary person could honestly believe that every unjustified, intentional taking of human life is "especially heinous."

*Id.* at 364, 108 S.Ct. at 1859.

Similarly, the phrase "unresisting victims" is of little value. We agree with the district court's conclusion that, while this phrase initially may have provided some objective guidance, it nevertheless cannot be relied upon to limit the discretion of the sentencing body after *Palmer*'s five-factor analysis redefined this phrase as "helplessness of the victim." "Unresisting" and "helpless" cannot be equated in the context of murder because "helpless" encompasses a much broader, and potentially a circular, meaning here: All murder victims could be characterized as "helpless," as evidenced by the fact that they were murdered.

The State relies heavily on the *Palmer* court's articulation of five factors which, according to the State, will support a finding of "exceptional depravity" if found to exist individually or collectively. The *Palmer* decision is particularly troubling to us, as it was to the district court. *Palmer* was decided more than six years after Moore was sentenced. Obviously, whatever guidance the *Palmer* decision has provided to sentencing bodies was of no value to the panel sentencing Moore in 1980. The State characterizes *Palmer* as merely "clarifying" existing law; however, we are not persuaded by this argument. First, if the only function of *Palmer*'s five-factor analysis was to clarify existing law, we do not see how it should be applied retroactively since the central issue here is the clarity of the law at the time when Moore was sentenced. The sentencing panel did not have the benefit of *Palmer*'s "clarification"; therefore, the State should not be permitted to rely on it now. Furthermore, we believe that the State's reliance on *Palmer* is misplaced because, as will be discussed, that case cannot be accurately characterized as simply clarifying existing law. Having noted our concerns with the State's reliance on *Palmer*, we nevertheless choose to include it in our analysis because it provides insight into the Nebraska Supreme Court's efforts to make the challenged language constitutionally acceptable.

## C.

*Palmer* provided an exhaustive summary of death penalty cases characterized as illustrative of "exceptional depravity," including Moore's case and the cases previously discussed here in the context of the precedent available to guide the panel sentencing Moore. 224 Neb. at 315–18, 399 N.W.2d at 729–31. The court then declared that the establishment of one or more of five specified factors would support a finding of "exceptional depravity," and further observed that at least one of the factors was present in each case it offered as illustrations of "exceptional depravity," including Moore's case. *Id.* at 320, 399 N.W.2d at 731–32.

Assuming arguendo that *Palmer* had been available to guide the panel sentencing Moore, we still are not convinced that the *Palmer* decision, when considered with the earlier cited cases, fulfills the constitutional obligation of the Nebraska Supreme Court. "[I]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Godfrey*, 446 U.S. at 428, 100 S.Ct. at 1764.

The Nebraska Supreme Court's attempt in *Palmer* to rearticulate its interpretation of the vague "exceptional depravity" language fails because it cannot be reconciled with the prior Nebraska cases. The district court also reached this conclusion and, after comparing *Palmer* with the earlier attempts to constitutionally define the aggravating circumstance in issue, stated that:

> The 1986 definition [in *Palmer*] of the second prong of aggravating factor (d) looks nothing like the pre–1986 illustrations.
>
> . . . .
>
> If the 1986 definition intended to abandon its pre–1986 efforts at guidance, it

did not say so distinctly. If it did not so intend, a sentencer now has a series of suggestions, some objective and some not, from which to choose, without assurance that the series is complete.

. . . .

In short, as earnest as the Supreme Court of Nebraska has been in its difficult task to bring Nebraska's statutory language of this aggravating factor into [constitutional] objectivity, a sentencer is left with only scattered and uncertain fragments for a definition.

*Palmer*'s conclusory statement that the illustrative cases each exhibited one or more of the five factors is unilluminating. While these cases may indeed have in common the fact that the circumstances of the murder lead one to subjectively conclude that the murders manifested "exceptional depravity," that subjective conclusion alone is insufficient to bring the vague language within constitutional confines. The court did not explain why one or more of the five factors existed in the illustrative cases nor do the cases themselves explicitly refer to any of the factors set forth in *Palmer*. In order for a state to impose the death penalty, the Constitution requires more than a subjective recognition that the case being considered is similar to other murders in which other defendants were sentenced to death. The Supreme Court has "plainly rejected the submission that a particular set of facts surrounding a murder, however shocking they might be, were enough in themselves, and without some narrowing

principle to apply to those facts, to warrant the imposition of the death penalty." *Maynard*, 486 U.S. at 363, 108 S.Ct. at 1859.

The *Palmer* court's attempt to articulate a workable, objective analysis is further flawed because some of the listed factors are necessarily subjective in nature and provide little, if any, restraint on the sentencing body's discretion. As was discussed previously, "helplessness" is too broad to be useful. Furthermore, as the district court observed, "senselessness of the crime" has no objective meaning. If senselessness of the crime were sufficient to permit a death penalty, virtually all murderers would be on death row. To us, the greater significance of *Palmer* is that it demonstrates the Nebraska Supreme Court's exhaustive efforts to redefine the phrase "exceptional depravity"; this simply underscores our conclusion that the phrase is unconstitutionally vague.

Our examination of the state court precedent available to guide sentencing bodies in Nebraska which are required to determine whether the murder "manifested exceptional depravity" leads us to conclude, as did the district court, that, as earnestly as the Nebraska Supreme Court has attempted to provide objective criteria,[6] the unconstitutional vagueness of the critical language in this statute remains. A sentencing body may glean only subjective and unilluminating fragments from existing case law.[7]

## D.

Furthermore, the Nebraska Supreme Court's review of this case, wherein the

---

6. Nebraska is not the only state to struggle with this issue. In *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983) (en banc), *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), the Arizona Supreme Court developed a five-factor test, the same test later adopted by the Nebraska Supreme Court in *Palmer*, to provide a limiting construction of the language "especially heinous, cruel, or depraved." *Id.* 135 Ariz. at 52, 659 P.2d at 11. This attempt was rejected by the Ninth Circuit. "*Gretzler*'s attempt to limit the broad scope of heinous and depraved has thus proven unsuccessful at preventing the unchanneled imposition of death sentences." *Adamson v. Ricketts*, 865 F.2d 1011, 1035 (9th Cir.1988) (en banc), *petition for cert. filed* (U.S. Mar. 20, 1989) (No. 88–1553).

7. The dissent argues that a sentencing body is not entirely precluded from considering subjective factors in its decision to impose the death penalty. We believe that this is an issue which we need not explore. Our inquiry is whether the state has acted to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980) (footnotes omitted). The constitutional safeguard of guided discretion is required because "the penalty of death is different in kind from any other punishment imposed under our system of criminal justice." *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976).

court extensively discussed the circumstances of Moore's crime and concluded that the murder "manifested exceptional depravity," does not overcome the constitutional deficiencies of the statute. This approach of reviewing the totality of circumstances surrounding the murder was rejected by the Supreme Court in *Maynard v. Cartwright*. The Tenth Circuit, in the *Maynard* opinion affirmed by the Supreme Court, held that "[c]onsideration of all the circumstances is permissible; reliance upon all of the circumstances is not." 822 F.2d 1477, 1491 (10th Cir.1987) (en banc). "The discretion of a sentencer who can rely upon all of the circumstances of a murder is as complete and as unbridled as the discretion afforded the jury in *Furman*. No objective standards limit that discretion." *Id.* Accordingly, the Nebraska Supreme Court's opinion affirming Moore's death sentence does not provide a "principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey*, 446 U.S. at 433, 100 S.Ct. at 1767.

In conclusion, we believe that the body of law developed by the Nebraska Supreme Court construing the challenged statute provides insufficient guidance to a sentencing body called upon to determine whether a particular murder "manifested exceptional depravity." The Nebraska Supreme Court is constitutionally required to "minimize the risk of wholly arbitrary and capricious action," *Gregg*, 428 U.S. at 189, 96 S.Ct. at 2932, by providing more objectivity and specificity in the criteria utilized to determine whether this aggravating circumstance applies.

We therefore affirm the judgment of the district court that section 29–2523(1)(d) is unconstitutionally vague as written and as construed.

## II.

Moore raises various arguments on cross-appeal. Among them, he argues that the district court erred by: (1) failing to hold that his sentence was unconstitutional because he did not have a jury trial on whether aggravating circumstances exist-

ed; (2) failing to find the aggravating circumstance in section 29–2523(1)(a) unconstitutionally vague; (3) failing to hold that his sentence was unconstitutional because the sentencing panel failed to consider all mitigating evidence; (4) failing to find that Moore was denied due process at his sentencing hearing; and (5) rejecting some of Moore's claims on the merits and finding waiver of others without the requested evidentiary hearings. Moore also contends that Nebraska's death penalty statutes as a whole lead to arbitrary results.

### A.

■ We deal summarily with the issue of Moore's right to have a jury trial on whether aggravating circumstances existed. The United States Supreme Court has expressly declared that a criminal defendant has "no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." *McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986). Furthermore, our recent opinion in *Harper v. Grammer*, 895 F.2d 473, 483 (8th Cir. 1990), expressly rejected the argument that a criminal defendant has a Sixth Amendment right to have a jury determine the existence of aggravating circumstances.

### B.

■ Moore argues that the following aggravating circumstance, found to be applicable to him, is unconstitutionally vague:

> The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity....

Neb.Rev.Stat. § 29–2523(1)(a). The sentencing panel determined that the first clause did not apply because Moore had not previously been convicted of another murder or violent crime; however, it found that the evidence established the existence of the second clause in Moore's case. In other words, Moore had a "substantial history of serious assaultive or terrorizing criminal

activity." This was based on the fact that Moore had committed the first murder four days before the second murder.

The Magistrate's Report and Recommendation rejected Moore's challenge to the constitutionality of this statutory provision; the district court adopted this conclusion. On appeal, we also adopt the magistrate's careful analysis of this issue, *see United States v. Rodriguez*, 888 F.2d 519, 521–22 (7th Cir.1989); therefore, we also conclude that this aggravating circumstance passes constitutional muster. The Nebraska Supreme Court has provided sufficient guidance to sentencing bodies, concerning this particular aggravating circumstance, to prevent the arbitrary and capricious infliction of the death penalty, and has specifically held that an earlier murder supports a finding that a defendant has a "substantial history of serious assaultive or terrorizing criminal activity." *See State v. Joubert*, 224 Neb. 411, 412–13, 426, 399 N.W.2d 237, 241, 248 (1986) (per curiam) (holding that defendant who committed a murder two and one-half months prior to the murder for which he was being sentenced had a substantial history of serious assaultive or terrorizing criminal activity), *cert. denied*, 484 U.S. 905, 108 S.Ct. 247, 98 L.Ed.2d 205 (1987); *see also State v. Rust*, 197 Neb. at 535, 250 N.W.2d at 872–73 (holding that the clause refers to events and incidents prior to and not part of the events out of which the current charge arises); *State v. Holtan*, 197 Neb. at 546, 250 N.W.2d at 879 (discussing the meaning of the challenged statutory language).

We note, however, that our holding is limited to Moore's constitutional vagueness argument. Further proceedings in this case may present new issues with respect to this aggravating circumstance, and Moore is not foreclosed from raising such issues in the future.

## C.

The other issues raised by Moore on cross-appeal are directed at perceived inadequacies in the procedures used in sentencing him. We believe that these issues are more appropriately resolved by the state court at the time that Moore is resentenced.

## D.

Finally, we note that the Supreme Court has recently handed down a decision concerning the constitutionality of a state appellate court reweighing the mitigating and aggravating circumstances after an aggravating circumstance has been held to be invalid. *Clemons v. Mississippi*, —— U.S. ——, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). After our mandate issues, the district court and the Nebraska state courts may consider whether this opinion has implications for any further proceedings which may be contemplated in this case.

## III.

In conclusion, we affirm the district court's order granting a writ of habeas corpus to Moore based on the unconstitutional vagueness of the "exceptional depravity" provision of the statute dealing with aggravating and mitigating circumstances, Neb.Rev.Stat. § 29–2523(1)(d).

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent. I believe that the Nebraska Supreme Court has provided an interpretation of section 29–2523(1)(d) that brings its language into constitutional confines. The statute provides that the death sentence may be imposed on a defendant where "[t]he murder ... manifested exceptional depravity by ordinary standards of morality and intelligence...." Neb.Rev. Stat. § 29–2523(1)(d) (Reissue 1985). As the majority points out, prior to Moore's sentencing the Nebraska Supreme Court had stated on several occasions that "exceptional depravity" in this context means "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life." *State v. Rust*, 197 Neb. 528, 539, 250 N.W.2d 867, 874, *cert. denied*, 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977); *State v. Stewart*, 197 Neb. 497, 521, 250 N.W.2d 849, 864 (1977); *State v. Holtan*, 197 Neb. 544, 547, 250

N.W.2d 876, 880, *cert. denied,* 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977). Further, the Nebraska Supreme Court had recognized that " 'all first degree murder crimes are capable of being accurately characterized by one or more of the descriptive adjectives employed, but by the use of the words "especially" and "exceptional" the legislature has required a much greater degree of these characteristics than is usually present in a murder.' " *Rust,* 197 Neb. at 538, 250 N.W.2d at 874. In *State v. Holtan,* the Nebraska Supreme Court had held that the second prong of section 29–2523(1)(d) applied even though the murder did not involve torture because "[t]he defendant killed, and attempted to kill, unresisting victims of the robbery." 197 Neb. at 547, 250 N.W.2d at 880. And, in *State v. Simants,* Nebraska's high court had stated that the key word in the second prong of the section is "exceptional." It acknowledged that "[i]t might be argued that every murder involves depravity. The use of the word 'exceptional,' however, confines it only to those situations where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence". 197 Neb. 549, 566, 250 N.W.2d 881, 891, *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977).

I believe that in these cases the Supreme Court of Nebraska has provided sufficient guidance to sentencing bodies that prevents the arbitrary imposition of the death penalty.

The majority concedes that the phrase "so coldly calculated" has an "aura of objectivity" and that the phrase "unresisting victims" initially provided some objective guidance, but ultimately concludes that Nebraska's definition taken as a whole calls for subjective consideration and is thus impermissible. I disagree. I do not claim that the second prong of section 29–2523(1)(d) as written and construed does not call upon the sentencing body to engage in any subjective consideration. I can see that it does call for the assessment of certain subjective factors. Any aggravating circumstance statute that attempts to describe only a state of mind, as section 29–2523(1)(d) does, will necessarily involve

some degree of subjectivity. But I do not believe that this statute must be declared unconstitutionally vague for that reason.

The United States Supreme Court has not required the states that choose to impose capital punishment to entirely preclude the sentencing body's consideration of subjective factors. In *Gregg v. Georgia,* the Court warned that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). That language does not suggest a rule that aggravating circumstances statutes must be based on entirely objective factors; rather, it forbids the "risk" of action that is "wholly arbitrary and capricious." Similarly, in *Proffitt v. Florida,* the Supreme Court stated that "the requirements of *Furman* [*v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)] are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, *thus eliminating total arbitrariness and capriciousness in its imposition.*" 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (emphasis added). Even though section 29–2523(1)(d) to some extent calls for a subjective judgment I believe that by its construction the Nebraska Supreme Court had, at the time of Moore's sentencing, provided contours to the statute that saved it from unconstitutional vagueness as that principle has been defined by the United States Supreme Court.

It seems to me that the majority's approach in this case could defeat virtually any aggravating circumstance statute, and by the use of semantics make a dead letter of any death statute. For example, the majority relies on the oft-repeated argument that words such as "senseless" and "depraved" offer no guidance because they

are too subjective and are terms that could accurately be used to describe any murder. The statutory aggravating circumstance upheld in *Proffitt*, construed as " 'the conscienceless or pitiless crime which is unnecessarily torturous to the victim' ", *see Proffitt*, 428 U.S. at 255, 96 S.Ct. at 2968 (quoting *State v. Dixon*, 283 So.2d 1, 9 (Fla. 1973), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)) is arguably objectionable for the same reasons: all first degree murders are in a sense conscienceless and pitiless, and "unnecessarily torturous" calls upon the sentencing body to somehow distinguish between torture that is unnecessary and torture that is something else. In that definition, the word "torturous" does offer objective guidance, but the terms "pitiless" and "conscienceless" certainly leave some subjective consideration to the sentencing body. Despite that, the United States Supreme Court upheld that construction against a vagueness challenge, and in my view implied that the states' obligation in this regard is not to remove all subjective factors, but, rather, to provide sufficient limits and guidance so that capital punishment is not imposed in a wholly arbitrary manner.

I believe that Nebraska has met that obligation. It authorizes the death penalty where a murder manifests a depravity that offends all standards of morality and intelligence, such as where the murderer engaged in cold calculation showing a complete lack of regard for human life or took the life of an unresisting victim. I am satisfied that that definition provides enough guidance to minimize the risk of wholly arbitrary and capricious action. The phrases "cold calculation" and "depravity offending all standards of morality and intelligence" and "unresisting victim" are sufficiently clear and specific and provide a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." *Gregg*, 428 U.S. at 188, 96 S.Ct. at 2932 (quoting *Furman*, 408 U.S. at 313, 92 S.Ct. at 2764 (White, J., concurring)).

I am further satisfied that the Nebraska Supreme Court permissibly applied section 29–2523(1)(d) in this case. The defendant unquestionably engaged in cold calculation as he chose his victims on the basis of his depraved belief that the life of an older person is less valuable than that of a young person, that for lucre, the preferred procedure for the murderer is to take the life of an unresisting victim in order to prevent identification of the murderer by his victim. The murderer's conduct here is by any standards indicative of conduct exceptionally depraved by "ordinary standards of morality and intelligence" and even by less than ordinary standards.

I would hold that the second prong of section 29–2523(1)(d) as construed by the Nebraska Supreme Court is not unconstitutionally vague and was permissibly applied in this case, and would thus reverse the district court's decision to grant the writ of habeas corpus.