STATE OF NEBRASKA, APPELLEE, V. CAREY DEAN MOORE,
APPELLANT.

553 N.W.2d 120

Filed September 27, 1996.   No. S-95-485.

Thomas M. Kenney, Douglas County Public Defender, and Thomas C. Riley for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

This matter comes to us under the automatic appeal provisions of Neb. Rev. Stat. § 29-2525 (Reissue 1995) from the resentence of death for each of two first degree murders imposed upon the defendant-appellant, Carey Dean Moore, on April 21, 1995, by a three-judge resentencing panel of the district court. We affirm each sentence.

## BACKGROUND

The events surrounding the murders which have resulted in the resentences at issue are set forth in this court's opinion of January 29, 1982, affirming on direct appeal the original sentences of death imposed by a sentencing panel of the district court on June 20, 1980. *State v. Moore*, 210 Neb. 457, 461-62, 316 N.W.2d 33, 36-37 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864, as follows:

> About August 20, 1979, [Moore] purchased the handgun with which the murders were committed. He acquired the gun by purchasing it from a cabdriver who had pawned the gun. [Moore] and the seller went together to the pawnshop where the gun was redeemed, [Moore] furnishing the money for the redemption and paying the seller an additional $50. The gun was then test-fired.

We now quote from the findings made by the sentencing panel in its order, which findings are fully supported by uncontroverted evidence: "[Moore's] own statements, in his confession to Officers O'Donnell and Thompson while in custody at Charles City, Iowa, indicate that these crimes had been in the planning stage for at least a day or two before the [Reuel Eugene] Van Ness[, Jr.,] homicide. Apparently on the evening prior to the Van Ness murder, [Moore] had called a number of cabs from a telephone booth somewhere on Farnam Street in the downtown Omaha area to see how quickly each would respond to his call. [Moore] then hid somewhere in the vicinity to await each cab's arrival, at which time he checked the cab to determine whether the driver would be a suitable victim, i.e., not too young, since [Moore] stated that it was easier for him to shoot an older man rather than a younger man nearer his own age. On the evening of the Van Ness homicide, [Moore's] plan was to call one cab at a time from the Smoke Pit restaurant, and, if the driver who responded 'wasn't too old,' [Moore] would just not identify himself as the fare for which the cab had been summoned. When . . . Van Ness arrived at the Smoke Pit on August 22, 1979, [Moore] determined that this was the driver who would be robbed and shot because 'he wasn't too young'.

"A similar pattern of events unfolded on August 26, 1979. [Moore] went to the Greyhound Bus depot at 18th and Farnam Streets in Omaha that evening, and, when he saw a lone cab with an older driver [Maynard D. Helgeland] parked at the taxi stand outside the depot, he got into the cab and directed the driver to take him to the Benson area. According to [Moore], this particular cab and driver were selected both because there were no other cabs at the taxi stand at the time, thus decreasing the chances of [Moore's] being identified, and because the driver was an older man. [Moore] then stated that, as previously discussed, he had planned ahead of time to rob and shoot the driver of whichever cab he selected." In his confessions [Moore] stated that he killed each of

the victims in order that the victim would not be able to identify him as the robber.

Moore thereafter, on June 29, 1982, filed a motion for post-conviction relief, which the district court denied on May 6, 1983, and which denial we affirmed on June 8, 1984. *State v. Moore*, 217 Neb. 609, 350 N.W.2d 14 (1984).

As a consequence, on November 14, 1984, Moore sought relief through a petition for a writ of habeas corpus filed in the U.S. District Court for the District of Nebraska. That court granted Moore relief by an order dated September 20, 1988. *Moore v. Clarke*, No. CV84-L-754 (D. Neb. Sept. 20, 1988). The State of Nebraska, the plaintiff-appellee in the instant proceeding, then appealed the *Clarke* decision to the U.S. Court of Appeals for the Eighth Circuit, which, on May 25, 1990, affirmed the grant of habeas corpus relief, holding unconstitutionally vague, both on its face and as interpreted by this court, the italicized exceptional depravity component of aggravating circumstance Neb. Rev. Stat. § 29-2523(1)(d) (Reissue 1995), that is, that the "murder was especially heinous, atrocious, cruel, or *manifested exceptional depravity by ordinary standards of morality and intelligence.*" (Emphasis supplied.) *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992).

The U.S. District Court thereafter, on July 1, 1992, issued an order directing that Moore's sentences be reduced to life imprisonment unless the State initiated resentencing proceedings within 60 days. On July 23, the State filed in this court a motion asking that we redefine the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) so as to satisfy the federal courts' constitutional objections, apply such redefinition to the circumstances of the case, reweigh all the aggravating and mitigating circumstances, and determine appropriate sentences. We noted that although we were of the view that this court possessed the authority to resentence Moore, the Eighth Circuit thought otherwise; we therefore concluded that notwithstanding that we were not bound by the Eighth Circuit's view, the interests of judicial economy would be better served by remanding the cause to the district court.

We thus did so on July 9, 1993. *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993).

## APPELLATE CLAIMS

Moore claims, in reorganized order, that the resentences cannot stand because (1) the proceedings at which they were imposed were untimely, (2) the resentencing panel applied the unconstitutional aggravating circumstance § 29-2523(1)(b), (3) the resentencing panel impermissibly formulated and applied a definition of the "exceptional depravity" component of aggravating circumstance § 29-2523(1)(d), (4) the death penalty is applied inconsistently, (5) objective sentencing standards are lacking, (6) the resentencing panel improperly considered Moore's custodial statements, (7) there exists no meaningful proportionality review, and (8) the resentencing panel failed to make appropriate findings.

## TIMELINESS OF PROCEEDINGS

The first appellate claim asserts that Moore "should be summarily sentenced to life imprisonment because the state failed to comply with the order of the eighth circuit court of appeals which required commencement of sentencing hearing within 60 days."

As noted previously, the order in question was actually issued by the U.S. District Court for the District of Nebraska, not the Eighth Circuit. But there is no question that the order required that Moore's death sentences be reduced to life imprisonment unless the State initiated capital resentencing proceedings within 60 days.

The State filed its motion for resentencing with this court well within the 60-day period. Nonetheless, Moore, relying on *Reeves v. Hopkins*, 871 F. Supp. 1182 (D. Neb. 1994), argues that as the district court is the only state court with resentencing authority, we lacked constitutional or statutory authority to reweigh the aggravating and mitigating circumstances and resentence him, and, thus, the motion the State filed with us was a nullity.

Based on the holding in *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir. 1993), *cert. denied* 508 U.S. 967, 113 S. Ct. 2950, 124 L. Ed. 2d 697, the federal district court in *Reeves* con-

cluded that Nebraska law provides for a two-tiered sentencing process in death penalty cases and that defendants have a federally protected liberty interest in such a procedure. However, as a federal decision interpreting Nebraska law, *Reeves* is simply not controlling. This court is the final arbiter of Nebraska law, not the federal courts.

In addition, the federal district court's decision in *Reeves v. Hopkins*, 871 F. Supp. 1182 (D. Neb. 1994), was recently reversed in part in *Reeves v. Hopkins*, 76 F.3d 1424 (8th Cir. 1996). In that case, the Eighth Circuit ruled that in *Reeves v. Hopkins*, 871 F. Supp. 1182 (D. Neb. 1994), the federal district court exceeded its authority when it decided to reject this court's interpretation of Nebraska law concerning our authority to reweigh the aggravating and mitigating circumstances. The Eighth Circuit also ruled that the federal district court had misinterpreted *Rust, supra*, noting that *Rust* concerned a very limited and unique situation wherein a death sentence had been imposed under a wrong and too lenient burden of proof. *Rust* held that this court's attempt to cure that grave error by applying the "beyond a reasonable doubt" burden on direct appeal violated due process because Rust was entitled to have a three-judge panel find the relevant facts and impose his sentence in the first instance. In *Reeves v. Hopkins*, 76 F.3d 1424 (8th Cir. 1996), the Eighth Circuit drew a distinction between cases in which the proceedings were entirely void, such as in *Rust*, and those involving a nonvoiding error, such as the improper consideration of an invalid aggravating circumstance, writing that

> "[a state] appellate court is fully competent to 'cure' some sentencing deficiencies in capital cases." *Rust*, 984 F.2d at 1493. We explained that *Clemons* applied to minor errors such as "improper consideration of an invalid aggravating circumstance," but not to entirely void sentencings requiring completely new factfindings. *Id.* at 1493-95. Nowhere in *Rust* did we intimate that Nebraska could not, consistent with due process, reweigh aggravating and mitigating circumstances to cure "minor" sentencing errors such as those in issue in *Clemons*. Nor did we intimate, as indeed in view of

*Clemons* we could not, that such reweighing would amount to a deprivation of a defendant's right to appeal his sentence. As we have stated in other cases, whether the Nebraska Supreme Court will engage, or has the authority to engage, in reweighing in circumstances similar to those presented in *Clemons* is a question of state law which only it can decide. *See Moore v. Clarke*, 951 F.2d 895, 897 (8th Cir.1991), *cert. denied*, 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992); *Harper v. Grammer*, 895 F.2d 473, 480 (8th Cir.1990).

76 F.3d at 1428-29. Therefore, for nonvoiding errors such as the improper consideration of an invalid aggravating circumstance, there is no federal bar to appellate reweighing. In such a situation, the question is one of state law.

As permitted by federal law, *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), under Nebraska law, a death sentence tainted by the improper application of an aggravating factor may be constitutionally cured by our reweighing the aggravating and mitigating circumstances involved. *State v. Reeves*, 239 Neb. 419, 476 N.W.2d 829 (1991), *cert. denied* 506 U.S. 837, 113 S. Ct. 114, 121 L. Ed. 2d 71 (1992). See, also, *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993).

Consequently, it was entirely proper for the State to petition this court to intervene and reweigh the aggravating and mitigating circumstances in this case. The fact that we chose not to exercise that power does not mean that the State did not initiate resentencing proceedings within the 60 days ordered by the U.S. District Court.

That being so, the first appellate claim fails.

### AGGRAVATING CIRCUMSTANCE § 29-2523(1)(b)

The second appellate claim is that "Nebraska Revised Statute 29-2523(1)(b) is unconstitutionally vague and overbroad and violates the 5th 8th and 14th Amendments to the U.S. Constitution and Article I Sections 3 and 9 of the Nebraska Constitution."

Two distinct assertions are encompassed within this claim. First, Moore argues that this aggravating circumstance is

vague and violates the requirement that all aggravating circumstances be proved beyond a reasonable doubt. Second, he asserts that this aggravating circumstance is overbroad in that it describes the vast majority of felony murders in which the victim is killed while the defendant is perpetrating or attempting to perpetrate a felony on the victim.

*Vagueness.*

Moore contends that the word "apparent" in aggravating circumstance § 29-2523(1)(b), reading, "[t]he murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime," is vague and thus subject to arbitrary and capricious application. This claim has been addressed by this court previously in *State v. Reeves*, 234 Neb. 711, 754, 453 N.W.2d 359, 386 (1990), and found to be without merit:

> Appellant contends "apparent" is vague. We agree with the court's analysis of this circumstance in *Holtan v. Black*, No. CV84-L-393, slip op. at 20 (D. Neb. Nov. 5, 1986), that "apparent" means "readily perceptible," and therefore "the provision cannot be applied in speculative situations or where a strained construction is necessary to fulfill it." This aggravating circumstance is not constitutionally infirm.

We can discern no reason to reconsider *Reeves*.

In a variant of that argument, Moore urges that use of the word "apparent" in aggravating circumstance § 29-2523(1)(b) lowers the State's burden of proof. He contends that this aggravating circumstance requires the State to show only that the killing was done "apparently" to conceal the commission of a crime or the identity of the perpetrator, a burden of proof less than the beyond-a-reasonable-doubt standard required by *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *cert. denied* 434 U.S. 878, 98 S. Ct. 231, 54 L. Ed. 2d 158. He maintains that the application of this lower burden of proof violates due process and constitutes reversible error under *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir. 1993), *cert. denied* 508 U.S. 967, 113 S. Ct. 2950, 124 L. Ed. 2d 697.

Moore confuses the substance of what must be proved with the placement of the burden to prove it. As we indicated in *Reeves, supra*, apparent means readily perceptible. "Apparent" qualifies aggravating circumstance § 29-2523(1)(b) to the extent that the provision cannot be applied in speculative situations or where a strained construction is necessary to fulfill it. Consequently, the substance of what must be proved to establish this aggravating circumstance is that the murder was committed in a readily perceptible effort to conceal the commission of a crime or to conceal the identity of the perpetrator of a crime. It is the State which must shoulder the burden of proving the existence of aggravating circumstance § 29-2523(1)(b) beyond a reasonable doubt. There is no constitutional infirmity in such an arrangement.

*Overbreadth.*

Next, Moore argues that the second component of aggravating circumstance § 29-2523(1)(b), the commission of a murder in an effort to conceal the identity of the perpetrator of a crime, is overbroad. Moore maintains that there are two lines of authority applying this aspect of aggravating circumstance § 29-2523(1)(b) in felony murder cases. Under the first line of cases, exemplified in Moore's mind by *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977), and *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984), *cert. denied* 469 U.S. 1028, 105 S. Ct. 447, 83 L. Ed. 2d 372, aggravating circumstance § 29-2523(1)(b) was found to exist when the defendant killed someone other than the victim of the underlying felony to hide the defendant's identity. In contrast, under the second line of cases, exemplified in Moore's view by *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986), *cert. denied* 484 U.S. 905, 108 S. Ct. 247, 98 L. Ed. 2d 205 (1987), and *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979), *cert. denied* 446 U.S. 988, 100 S. Ct. 2974, 64 L. Ed. 2d 846 (1980), the aggravating circumstance was found to exist when the defendant killed the victim of the underlying felony. Moore contends that this second line of cases is overbroad and would include virtually every felony murder case. He argues that only the first line of cases is valid and that aggravating cir-

cumstance § 29-2523(1)(b) should be construed to reach only murders which were committed to hide the defendant's involvement in some crime unrelated to the killing for which the defendant is being sentenced. Moore further argues that since there is no evidence that he was attempting to conceal his identity as the perpetrator of any unrelated crime, this aggravating circumstance should not apply.

Moore's argument fails. There is but one line of cases in which the common thread is that the record supports a finding beyond a reasonable doubt that "[t]he murder was committed in an apparent effort . . . to conceal the identity of the perpetrator of a crime." The fact that some of these murders were committed to silence the victim of the underlying felony, *Joubert, supra*, *Otey, supra*, and others, to escape detection for an unrelated crime, *Rust, supra*, and *Reeves, supra*, is legally irrelevant.

In addition, Moore is wrong in contending that nearly every felony murder would fall within this aggravating circumstance. As we have noted in *State v. Hunt*, 220 Neb. 707, 725, 371 N.W.2d 708, 720-21 (1985), "Certainly, any killing has the effect of rendering the victim incapable of identifying the perpetrator; that truism, however, does not satisfy the requirement that the murder be committed 'to conceal the identity of the perpetrator.'" It is clear, then, that to establish this aggravating circumstance, the State must prove beyond a reasonable doubt more than that a murder was committed. The State must prove not only that the perpetrator had an intent to kill, but also that the perpetrator had a specific motive for that killing, i.e., the concealment of his or her involvement in a crime. The reach of this aggravating circumstance is even further circumscribed by the requirement that the murder be committed in an apparent effort to conceal the identity of the perpetrator. This qualifies the aggravating circumstance to the extent that it cannot be applied in speculative situations or where a strained construction is necessary to fulfill it. Based on the foregoing, it is evident that not all or even most felony murders will fall within the purview of this aggravating circumstance, but within only a narrow subclass.

*Resolution.*

As a consequence, there is no merit to this appellate claim.

## AGGRAVATING CIRCUMSTANCE § 29-2523(1)(d)

Moore's third appellate claim is that the "sentencing panel committed reversible error by applying an unconstitutionally vague statutory aggravating circumstance section 29-2523 (1)(d) and by fashioning their [sic] own new definition of the aggravating circumstance in an ex post facto manner thereby depriving [Moore] of notice of the elements of the aggravating circumstance and further depriving him of the opportunity to respond and present evidence to rebut the facts necessary to establish the presence of the newly defined aggravating circumstance."

Moore argues that as no constitutionally valid construction of exceptional depravity existed for the resentencing panel to apply, it erred in relying upon that component of aggravating circumstance § 29-2523(1)(d). He also challenges the authority of the panel to formulate its own definition of exceptional depravity, asserts that the panel's definition of exceptional depravity is unconstitutionally vague and overbroad, and finally, urges that by applying its definition in an ex post facto manner, the panel deprived him of notice of the elements of that component of aggravating circumstance § 29-2523(1)(d) and of an opportunity to respond and present evidence to rebut the facts necessary to establish the newly defined aggravating circumstance.

*Existence of Definition.*

We deal first with Moore's argument that there was at the time of his resentencing no constitutionally viable definition of exceptional depravity available to the resentencing panel.

Aggravating circumstance § 29-2523(1)(d) contains two separate disjunctive components which may operate together or independently of one another. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). The second component of this aggravating circumstance exists if a murder "manifest[s] exceptional depravity by ordinary standards of morality and intelligence." § 29-2523(1)(d). We have said that this pertains to " 'the state of mind of the actor' " and "may be proved by or inferred

from the defendant's conduct at or near the time of the offense." *State v. Palmer*, 224 Neb. 282, 319, 399 N.W.2d 706, 731 (1986), *cert. denied* 484 U.S. 872, 108 S. Ct. 206, 98 L. Ed. 2d 157 (1987).

In order to guide the sentencing authority in applying this aggravating circumstance, we have construed exceptional depravity to mean "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life . . . ." *State v. Harper*, 208 Neb. 568, 579, 304 N.W.2d 663, 669 (1981), *cert. denied* 454 U.S. 882, 102 S. Ct. 368, 70 L. Ed. 2d 194. Accord, *State v. Peery*, 199 Neb. 656, 261 N.W.2d 95 (1977), *cert. denied* 439 U.S. 882, 99 S. Ct. 220, 58 L. Ed. 2d 194 (1978); *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977), *cert. denied* 434 U.S. 912, 98 S. Ct. 313, 54 L. Ed. 2d 198. See, *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864; *State v. Holtan*, 197 Neb. 544, 250 N.W.2d 876 (1977), *cert. denied sub nom.* 434 U.S. 912, 98 S. Ct. 313, 54 L. Ed. 2d 198; *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977). We have also emphasized that the use of the word "exceptional" confines this aggravating circumstance to only those situations where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence. *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *cert. denied* 434 U.S. 878, 98 S. Ct. 231, 54 L. Ed. 2d 158.

In an effort to provide additional guidance regarding this aggravating circumstance, we adopted in *Palmer* a five-factor test which could be used to determine whether a murder demonstrated exceptional depravity, writing:

> Therefore, for the purpose of [applying] § 29-2523(1)(d) as an aggravating circumstance in determining whether the death penalty may be imposed, we hold that "exceptional depravity" in a murder exists when it is shown, beyond a reasonable doubt, that the following circumstances, either separately or collectively, exist in reference to a first degree murder: (1) apparent relishing of the murder by the killer; (2) infliction of gratuitous violence on the victim; (3) needless mutilation of

the victim; (4) senselessness of the crime; or (5) help-lessness of the victim.

224 Neb. at 320, 399 N.W.2d at 731-32. We also observed that one or more of the five factors were present in the following death penalty cases where exceptional depravity was found to exist: *Holtan, supra*; *Simants, supra*; *Peery, supra*; *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979), *cert. denied* 446 U.S. 988, 100 S. Ct. 2974, 64 L. Ed. 2d 846 (1980); *Harper, supra*; *Moore, supra*; *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984), *cert. denied* 469 U.S. 1028, 105 S. Ct. 447, 83 L. Ed. 2d 372. However, our language in *Palmer* should not be read as an abandonment of our previous definition of exceptional depravity. Indeed, on the very same day as *Palmer*, we decided *State v. Joubert*, 224 Neb. 411, 432, 399 N.W.2d 237, 251 (1986), *cert. denied* 484 U.S. 905, 108 S. Ct. 247, 98 L. Ed. 2d 205 (1987), a case where the "coldly planned," that is to say "coldly calculated," element of exceptional depravity was applied in addition to the *Palmer* factors.

While we have maintained that both the *Palmer* factors and the "coldly calculated" language from previous decisions provided sufficient guidance to the sentencing authority, the federal courts have not always agreed. The U.S. District Court for the District of Nebraska granted Moore habeas corpus relief on the ground that the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) was unconstitutionally vague both on its face and as construed. *Moore v. Clarke*, No. CV84-L-754 (D. Neb. Sept. 20, 1988). On appeal, the Eighth Circuit affirmed, disapproving both the "coldly calculated" language and the *Palmer* factors. *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992). However, the comments of the Eighth Circuit regarding the constitutional viability of the *Palmer* factors were dicta and in any event cannot be considered authoritative in light of the subsequent opinion it issued in denying the State a rehearing in *Moore v. Clarke*, 951 F.2d 895 (8th Cir. 1991), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992). Noting the U.S. Supreme Court's intervening opinions in *Walton v.*

*Arizona*, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990), and *Lewis v. Jeffers*, 497 U.S. 764, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990), the second opinion reaffirmed the limited grant of habeas corpus relief to Moore on the basis that the "coldly calculated" language was unconstitutionally vague. Significantly, though, the Eighth Circuit this time refused to comment on the constitutionality of the *Palmer* factors; it merely noted that the narrower *Palmer* definitions had not been applied in Moore's case. The Eighth Circuit, citing to both *Walton v. Arizona, supra*, and *Moore v. Clarke*, 951 F.2d 895 (8th Cir. 1991), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992), has since concluded that *Palmer*'s narrower construction of exceptional depravity is clearly constitutional. *Joubert v. Hopkins*, 75 F.3d 1232 (8th Cir. 1996).

Accordingly, we have no trouble concluding, as indeed we have always maintained, that the *Palmer* construction of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) is constitutional. See, *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995); *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989), *cert. denied* 498 U.S. 881, 111 S. Ct. 216, 112 L. Ed. 2d 176 (1990); *State v. Joubert, supra*; *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), *cert. denied* 484 U.S. 872, 108 S. Ct. 206, 98 L. Ed. 2d 157 (1987). It therefore cannot be said that at the time of Moore's resentencing, there existed no constitutionally viable definition of exceptional depravity. The resentencing panel could have applied the *Palmer* factors.

*Resentencing Panel's Authority.*

Notwithstanding the constitutional viability of the *Palmer* factors, given this court's refusal in *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993), to resentence Moore; the Eighth Circuit's criticism in *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992), of our efforts to read the legislative language in a constitutional fashion in *Palmer*; and the fact that *Joubert v. Hopkins* had not yet been decided, the resentencing panel concluded that there was in place no constitutionally viable

interpretation of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d). The panel then undertook to establish in a comprehensive manner appropriate limiting conditions for that component. In crafting its definitions, the resentencing panel took the basic factors of exceptional depravity as described in *Palmer*, combined them with our pre-*Palmer* definitions, and then narrowed them in order to provide the historically comprehensive definition that the Eighth Circuit had found to be lacking in *Moore v. Clarke, supra*. It is this effort that Moore now challenges.

Although the resentencing panel's view that there was no constitutionally viable interpretation of exceptional depravity was mistaken, it was, given the confusing state of precedent on the issue, nevertheless within its authority to define the exceptional depravity component in such a way as to ensure that Moore received sentences that were consistent with constitutional requirements. Obviously, in the absence of clear precedent, a trial court confronting a statute for the first time must apply the statute in accordance with its own understanding of it. See, e.g., *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994); *In re Estate of Holt*, 246 Neb. 50, 516 N.W.2d 608 (1994); *State v. Stein*, 241 Neb. 225, 486 N.W.2d 921 (1992).

*Constitutionality of Resentencing Panel's Definition.*

That brings us to Moore's contention that the resentencing panel's definition of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) is unconstitutionally vague and overbroad.

According to the resentencing panel, exceptional depravity could be proved if any one or more of the four definitions the panel had developed were found to apply. Three of these definitions were simply narrower versions of the first three *Palmer* factors: (1) the killer's infliction of prolonged or significant physical violence, such as sexual abuse, on the victim after the victim's death or loss of consciousness; (2) the killer's mutilation or dismemberment of the victim's body after death; and (3) the apparent relishing of the murder by the killer. However, the fourth definition developed by the panel

was not based on *Palmer*, but on the "coldly calculated" language that the Eighth Circuit had disapproved. This fourth definition read:

> the killer's **cold, calculated planning** of the victim's death, as exemplified by **experimentation** with the **method** of **causing** the victim's **death** or by the **purposeful selection** of a particular **victim** on the basis of **specific characteristics** such as race, gender, creed, sexual orientation, disability, or age. See, e.g. State v. Harper, 208 Neb. 568, 573-574, 304 N.W.2d 663, 667, cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981); id. at 576, 304 N.W.2d at 668 (experimentation with method of death, poison, by administration to family pets); State v. Moore, 210 Neb. at 461-462, 316 N.W.2d at 36-37; id. at 471, 316 N.W.2d at 41 (selection of victim based on particular characteristics). This element is based on the Nebraska Supreme Court's interpretation of "exceptional depravity" in the two cases cited as examples, and is intended to require more than merely the premeditation necessary to support a conviction for first-degree murder.

To resolve the question before us, we need only concern ourselves with this fourth definition inasmuch as it was the only one the resentencing panel found to be present. The requirement of that definition, that there be "cold, calculated planning of the victim's death," is merely a narrowing of our previous articulations of exceptional depravity found in *State v. Harper*, 208 Neb. 568, 304 N.W.2d 663 (1981), *cert. denied* 454 U.S. 882, 102 S. Ct. 368, 70 L. Ed. 2d 194, and *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864. Under the panel's definition, this aspect of exceptional depravity is restricted to just two situations: (1) where the defendant experimented with the method of causing the victim's death or (2) where the defendant purposefully selected a particular victim on the basis of specific characteristics such as race, gender, creed, sexual orientation, disability, or age. This definition is clearly narrower and more specific than the "so coldly calculated as to indicate a state of mind totally and senselessly

bereft of any regard for human life" language relied upon by Moore's original sentencing panel. Consequently, the resentencing panel's definition is not vague. It provides sufficient guidance to the sentencing authority "so as to minimize the risk of wholly arbitrary and capricious action," *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976), and constitutes a " 'meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not,' " 428 U.S. at 188, quoting *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972).

Neither is the resentencing panel's definition overbroad, as alleged by Moore. By requiring more than the premeditation necessary to support a first degree murder conviction, this aspect of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) is clearly restricted to a subclass of those defendants convicted of first degree murder. Moore's claim that the panel's definition was vague and overbroad is therefore without merit.

We find the resentencing panel's reformulation of the "cold, calculated planning" aspect of exceptional depravity to be sound and hereby adopt it. Thus, the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) may be proved either by demonstrating the existence of one or more of the factors identified in *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), *cert. denied* 484 U.S. 872, 108 S. Ct. 206, 98 L. Ed. 2d 157 (1987), or by demonstrating "the killer's cold, calculated planning of the victim's death," as exemplified by experimentation with the method of causing the death or by the purposeful selection of a particular victim on the basis of specific characteristics.

*Ex Post Facto Application.*

That brings us to Moore's assertion that by formulating its definition of exceptional depravity in an ex post facto manner, the resentencing panel deprived him of notice of the elements involved and of an opportunity to respond and present evidence to rebut the facts necessary to establish the newly defined aggravating circumstance. In reliance on *Bouie v. City*

*of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), Moore urges that the panel's definition of exceptional depravity cannot be applied to him.

In *Bouie*, the petitioners, "sit-in" demonstrators who refused to leave the premises after a request, were convicted under a criminal trespass statute providing that " '[e]very entry upon . . . lands of another . . . after notice . . . prohibiting such entry, shall be a misdemeanor . . . .' " 378 U.S. at 349 n.1. The South Carolina Supreme Court, in affirming the petitioners' convictions, construed the statute to cover not only the act of entry on the premises of another after receiving notice not to enter, but also the act of remaining on the premises of another after receiving notice to leave. The petitioners appealed, asserting that the retroactive application of an expanded interpretation of South Carolina's criminal trespass statute "violated the requirement of the Due Process Clause that a criminal statute give fair warning of the conduct which it prohibits." *Id.* at 350. The U.S. Supreme Court agreed and held that "[w]hen a[n] . . . unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Id.* at 354-55. The *Bouie* Court further held that this prohibition applies not only when a judicial construction makes an action " 'which was innocent when done, criminal,' " but also when a judicial construction " 'aggravates a crime, or makes it greater than it was, when committed.' " (Emphasis omitted.) *Id.* at 353, quoting *Calder v. Bull*, 3 U.S. 386, 1 L. Ed. 648 (1798).

But as we saw earlier, the resentencing panel's definition did not expand the statutory reach of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d). Rather, the panel's definition represented a further narrowing of our construction of the "cold, calculated planning" aspect of exceptional depravity. Thus, *Bouie* simply does not apply here.

Moore further urges, however, that the resentencing panel was required by due process to redefine exceptional depravity

prior to the evidentiary hearing so as to provide him with notice and a fair opportunity to rebut the evidence presented by the State to establish this newly defined aggravating circumstance. He argues that he could not reasonably be expected to speculate as to the meaning of exceptional depravity and that he had the right to proceed on the assumption that the aggravating circumstance was unconstitutionally vague and therefore void for the purposes of the resentencing hearing.

However, an examination of the record of the resentencing proceedings makes clear that the reason the resentencing panel did not inform Moore of its new construction of exceptional depravity prior to the evidentiary hearing is that the definition itself was an issue in the proceedings.

Moore and the State each presented arguments addressing the applicability of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) in light of the Eighth Circuit's opinion in *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992). While Moore argued that the exceptional depravity component was constitutionally invalid and therefore could not be applied in this case, the State argued that the *Palmer* factors were constitutionally valid and should be applied.

It cannot be maintained that it was constitutionally impermissible for the resentencing panel to apply to Moore its narrowed construction of aggravating circumstance § 29-2523(1)(d). The U.S. Supreme Court has long held that a statute, as construed, " 'may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendan[t].' " *Osborne v. Ohio*, 495 U.S. 103, 115, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990), citing *Dombrowski v. Pfister*, 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).

The fundamental question is what threshold notice is actually required by the 14th Amendment in a sentencing phase of a capital case. Moore's case should be considered in two parts: (1) What is the level of notice regarding the exceptional depravity prong of aggravating circumstance § 29-2523(1)(d) required under the 14th Amendment, and (2) did the notice

given to Moore comply with that requirement. We suggest the following analysis:

In *Maynard v. Cartwright*, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988), the Court distinguished between vagueness for purposes of determining whether a defendant had notice of issues to be litigated and vagueness for purposes of the Eighth Amendment. Although the standards for vagueness in the 8th Amendment are fairly stringent, the threshold for vagueness under the 14th Amendment is much lower: "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." 486 U.S. at 361.

The 14th Amendment notice requirement must ensure (1) that the language of the statute and previous constructions of it in existence at the time of the crime provided reasonable notice to a person of ordinary intelligence of the scope of criminal behavior reached by the statute and (2) that any new construction of the statute which occurs after the crime does not increase the scope of behavior considered under the particular aggravating circumstance. See, *Maynard, supra*; *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964).

Prior to Moore's hearing, a person of ordinary intelligence in Moore's situation would have been aware of the following information regarding the exceptional depravity prong of aggravating circumstance § 29-2523(1)(d): (1) the language of the statute; (2) our pre-*Palmer* constructions of exceptional depravity; (3) the factors stated in *Palmer*; (4) our statement in *State v. Joubert*, 224 Neb. 411, 432, 399 N.W.2d 237, 251 (1986), that exceptional depravity was also demonstrated by the fact that the murders in that case were "coldly planned as part of a repetitive program of self-gratification, involving immature victims selected on the basis of their availability at a time when the likelihood of detection was slight"; (5) the previous holding in *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864 (the victims were selected on the basis of certain

characteristics, including age); and (6) U.S. Supreme Court holdings affirming the factors annunciated in *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983), *cert. denied* 461 U.S. 971, 103 S. Ct. 2444, 77 L. Ed. 2d 1327, and followed in *Palmer*, which were held to be constitutional; *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990); *Lewis v. Jeffers*, 497 U.S. 764, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); *Arave v. Creech*, 507 U.S. 463, 113 S. Ct. 1534, 123 L. Ed. 2d 188 (1993).

All of this information bears upon the exceptional depravity prong of aggravating circumstance § 29-2523(1)(d) and was available to Moore prior to his resentencing hearing. Therefore, based on the above, Moore cannot reasonably argue in view of the information above stated that he could not anticipate that his conduct at issue in this case might be at risk of being considered to be an aggravating circumstance under a narrowing reformation of that aggravating circumstance. A person of ordinary intelligence should be held to be on notice that this behavior might be addressed under aggravating circumstance § 29-2523(1)(d) when this court has previously upheld the application of the exceptional depravity aggravating circumstance to the facts of Moore's case itself. See *Moore, supra*.

The second factor of the notice requirement is to protect the defendant against the possibility that the sentencing panel will, after the behavior has been committed, construe the statute in such a way as to reach that behavior despite the fact that the new construction is unforeseeable and reaches a larger set of conduct than the statute reached as previously construed.

Here, the resentencing panel's reformation of aggravating circumstance § 29-2523(1)(d) after Moore's hearing met the second part of the notice requirement because the reformulation was clearly foreseeable for the same reasons stated above regarding the language of the aggravating circumstance and the previous constructions of it. The panel's reformulation of the aggravating circumstance after the resentencing did not expand the range of conduct that Moore was on notice to be prepared to discuss under aggravating circumstance § 29-2523(1)(d). The panel reformulated the "cold, calculated planning" lan-

guage. As the panel noted, these two factors, experimentation with the cause of death and the purposeful selection of the victim, were selected out of previous cases in which exceptional depravity had been found, citing *State v. Harper*, 208 Neb. 568, 304 N.W.2d 663 (1981), *cert. denied* 454 U.S. 882, 102 S. Ct. 368, 70 L. Ed. 2d 194 (experimentation with method of death, poison), and *Moore, supra* (selection of victim based on characteristics, including age).

Thus, the resentencing panel's reformulation of the aggravating circumstance was accomplished by isolating the previous applications of the exceptional depravity prong of aggravating circumstance § 29-2523(1)(d). This is by definition a narrowing of the information which Moore had regarding this aggravating circumstance prior to the resentencing hearing. As such, it was neither unforeseeable nor did it expand the reach of that aggravating circumstance beyond information that Moore was on notice to prepare for concerning such aggravating circumstance.

Indeed, Moore received even greater notice than constitutionally required. He knew from the Eighth Circuit's opinion in *Moore v. Clarke*, 904 F.2d 1226 (8th Cir. 1990), *cert. denied* 504 U.S. 930, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992), that the scope of the exceptional depravity component of aggravating circumstance § 29-2523(1)(d) would be an issue in the resentencing proceedings. Thus, he could hardly have been surprised when the resentencing panel further narrowed the definitions of exceptional depravity precisely along the lines suggested by the federal courts.

Neither is there any merit in Moore's contention that he had a right to presume that the exceptional depravity component was unconstitutionally vague and therefore void; he certainly should have expected that the resentencing panel would seek to apply the applicable aggravating and mitigating circumstances specified by the Legislature in a manner which met constitutional requirements.

We therefore conclude that because Moore received sufficient notice and an opportunity to present evidence at the resentencing hearing, there was no violation of due process.

*Resolution.*

For the foregoing reasons, Moore's third appellate claim is without merit.

## INCONSISTENT APPLICATION OF DEATH PENALTY

The fourth appellate claim avers that the "death penalty in Nebraska is applied in an uneven, inconsistent, arbitrary and capricious fashion in violation of the due process clause of the state and federal constitutions and further violates both constitutions as it's [sic] application constitutes cruel and unusual punishment."

He argues that the death penalty is inconsistently applied in that the interpretation of the role of the prosecutor and the effect of the prosecutor's decision to present or not present evidence of aggravating circumstances vary from county to county. He illustrates this contention by evidence he claims demonstrates that the Douglas County prosecutor has a different understanding of the obligation to present evidence of aggravating circumstances than does the Lancaster County prosecutor.

Albeit in different form, we have previously considered and rejected this claim. In *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *cert. denied* 434 U.S. 878, 98 S. Ct. 231, 54 L. Ed. 2d 158, the petitioner argued, among other things, that the discretion exercised by the prosecutor in the Nebraska sentencing scheme resulted in a substantial risk that the death penalty would be applied in an arbitrary and capricious manner. We rejected that claim, citing the U.S. Supreme Court's decision in *Gregg v. Georgia*, 428 U.S. 153, 199, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976), which stated:

> The existence of these discretionary stages is not determinative of the issues before us. At each of these stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty. *Furman*, in contrast, dealt with the decision to impose the death sentence on a specific individual who had been convicted of a capital offense. Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates

the Constitution. *Furman* held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant.

Clearly, the focus of *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), and its progeny has been on suitably directing and limiting the discretion of the sentencing body which actually imposes the sentence in a given case. In the absence of a showing of purposeful discretion based on an unjustifiable standard such as race, religion, or other arbitrary classification, assertions that prosecutorial discretion results in the arbitrary and capricious application of the death penalty simply do not present cognizable constitutional issues. See, *McCleskey v. Kemp*, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987); *State v. Miller*, 216 Neb. 72, 341 N.W.2d 915 (1983).

Accordingly, Moore's fourth appellate claim is likewise without merit.

## OBJECTIVE STANDARDS

The fifth appellate claim avers that the "Nebraska death penalty scheme violates the Eighth Amendment prohibition against cruel and unusual punishment in that it fails to channel the sentencer[']s discretion by objective standards and sets forth two inconsistent standards of proof as a predicate to imposition of the death penalty."

*Claimed Conflicts.*

Moore first directs our attention to Neb. Rev. Stat. § 29-2519 (Reissue 1995), which, in relevant part, states that "the death penalty . . . shall only be imposed in those instances when the aggravating circumstances existing in connection with the crime outweigh the mitigating circumstances . . . ." Moore maintains that this provision conflicts with Neb. Rev. Stat. § 29-2522 (Reissue 1995), which states:

> After hearing all of the evidence and arguments in the sentencing proceeding, the judge or judges shall fix the sentence at either death or life imprisonment, but such

determination shall be based upon the following consid-
erations:

(1) Whether sufficient aggravating circumstances exist
to justify imposition of a sentence of death;

(2) Whether sufficient mitigating circumstances exist
which approach or exceed the weight given to the aggra-
vating circumstances; or

(3) Whether the sentence of death is excessive or dis-
proportionate . . . .

The specific conflict alleged by Moore is that these two
statutes set out inconsistent standards for imposing the death
penalty. According to Moore, under § 29-2519, the death
penalty may be imposed on the mere showing that the aggra-
vating circumstances outweigh the mitigating circumstances,
whereas, under § 29-2522, the death penalty may not be
imposed when the mitigating circumstances approach or
exceed the weight given to the aggravating circumstances.
Moore also argues that the term "approach" contained in
§ 29-2522 is vague and contends that as a result of these infir-
mities, the Nebraska death penalty scheme fails to properly
channel the sentencer's discretion by objective standards, a
circumstance which results in the arbitrary and capricious
application of the death penalty in violation of the Eighth
Amendment.

There is no conflict between the two statutes. First of all,
the language at issue in § 29-2519 is merely prefatory language
indicating the Legislature's general desires with respect to this
legislation. Second, when read in context, § 29-2519 makes
clear that the standards articulated in Neb. Rev. Stat.
§§ 29-2520 to 29-2524 (Reissue 1995) are to govern the
administration of the death penalty. Of the aforementioned sec-
tions, only § 29-2522 details the standards which govern the
imposition of the death penalty. There is then but one standard
for imposing the death penalty, not two as postulated by
Moore. Under that standard, if sufficient mitigating circum-
stances exist which approach or exceed the weight given to the
aggravating circumstances, the death penalty cannot be
imposed. *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881

(1977), *cert. denied* 434 U.S. 878, 98 S. Ct. 231, 54 L. Ed. 2d 158.

*Claimed Vagueness.*

Moore further claims that the standard articulated in § 29-2522(2) is rendered vague by the inclusion of the word "approach." His specific complaint is that it is not clear how closely the mitigating circumstances must approximate the weight of the aggravating circumstances before a death sentence becomes inappropriate. Thus, according to Moore, different sentencing authorities could reach different conclusions, rendering the application of the death penalty arbitrary and capricious in violation of the Eighth Amendment.

The U.S. Supreme Court has established two phases to a constitutional capital sentencing process: (1) the determination that the defendant is "death eligible" and (2) the creation of an "individualized sentence" for the defendant. *Tuilaepa v. California*, 512 U.S. 967, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994). In the first phase, "the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." 512 U.S. at 972. The aggravating circumstance must meet two requirements. First, it must not apply to every defendant convicted of a murder; rather, it must apply to only a subclass of defendants convicted of murder. See *Arave v. Creech*, 507 U.S. 463, 474, 113 S. Ct. 1534, 123 L. Ed. 2d 188 (1993) ("[i]f the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm"). Second, the aggravating circumstance may not be unconstitutionally vague. *Godfrey v. Georgia*, 446 U.S. 420, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980). There is a separate requirement for the second phase, where the sentencing authority determines if a defendant eligible for the death penalty should in fact receive that sentence. What is important here "is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983). At this stage, " 'discretion to evaluate and weigh the circum-

stances relevant to the particular defendant and the crime he committed' is not impermissible in the capital sentencing process." *Tuilaepa*, 512 U.S. at 979, quoting *McCleskey v. Kemp*, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987). Indeed, as the U.S. Supreme Court has noted, the sentencing authority may be given " 'unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty.' " *Tuilaepa*, 512 U.S. at 979-80, quoting *Zant, supra*.

Although under the federal Constitution it would clearly be permissible to grant the sentencing authority unfettered discretion in determining whether the death penalty should be imposed, our law directs that the death penalty not be imposed in cases where sufficient mitigating factors approach or exceed the weight given to the aggravating circumstances. The narrow question before us, then, is whether the word "approach" is so vague as to compromise the sentencing procedure leading to bias or caprice in sentencing. It is not.

In everyday usage, the word "approach" means "a coming or being near in quality or character." Webster's Third New International Dictionary, Unabridged 106 (1993). Thus, the reasonable meaning of § 29-2522(2) is that when "sufficient mitigating circumstances exist which [come near to] . . . the weight given to the aggravating circumstances," the death penalty cannot be imposed. Although application of the standard obviously requires a balancing of the aggravating and mitigating circumstances, the standard is not vague.

*Resolution.*

Accordingly, neither is there any merit to this appellate claim.

## CUSTODIAL STATEMENTS

The sixth appellate claim avers that the "sentencing panel erroneously considered the defendant[']s custodial statements given to police authorities in that they were obtained in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and also by refusing to grant [Moore] an evidentiary hearing to test their constitutional validity in vio-

lation of the due process clause of the Fourteenth Amendment to the U.S. Constitution."

Essentially, the claim is that the resentencing panel should not have considered Moore's custodial statements because they were obtained in violation of his constitutional rights. But this issue was resolved against Moore at trial, and he failed to raise it in his direct appeal. *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864. Just as a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, *State v. Wickline*, 241 Neb. 488, 488 N.W.2d 581 (1992), Moore cannot use the resentencing hearing as a forum to relitigate the admissibility of his custodial statements. Under the law of this state, the issue is procedurally barred, and the panel therefore properly denied Moore's request for an evidential hearing on this matter.

This appellate claim, too, is therefore without merit.

### PROPORTIONALITY REVIEW

The seventh appellate claim is that the "proportionality review provided for in Neb. Rev. Statute 29-2522 violates the due process clause and the prohibition against cruel and unusual punishment in the U.S. Constitution and Article I, Sections 3 and 9 of the Constitution of the State of Nebraska."

Moore recognizes that the federal Constitution does not require proportionality review in all capital cases, but he maintains that the U.S. Supreme Court has recognized that some capital sentencing schemes are "so lacking in other checks on arbitrariness that [they] would not pass constitutional muster without comparative proportionality review . . . ." *Pulley v. Harris*, 465 U.S. 37, 51, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). Moore asserts that this state has such a vulnerable sentencing scheme and that a comparative proportionality review in which the defendant's sentence is reviewed in relation to similar defendants in similar cases is required by the state and federal Constitutions. Moore further asserts that the proportionality review we conduct under § 29-2521.03 is inadequate, and he invites us to reconsider our interpretation of that

statute, as set forth in *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), *cert. denied* 484 U.S. 872, 108 S. Ct. 206, 98 L. Ed. 2d 157 (1987).

Moore misunderstands the U.S. Supreme Court's statement in *Pulley*. Read in context, it is clear that the *Pulley* Court did not mean that the Constitution would require comparative proportionality review if a sentencing scheme was so lacking in other checks on arbitrariness, but merely that comparative proportionality review might save such a vulnerable scheme from being unconstitutional. In any event, there are clearly sufficient checks on the arbitrary application of the death penalty in our capital sentencing scheme that comparative proportionality review is not needed to save the system from being unconstitutional. See, e.g., *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979), *cert. denied* 446 U.S. 988, 100 S. Ct. 2974, 64 L. Ed. 2d 846 (1980) (Nebraska death penalty sentencing procedure does not violate either Nebraska or federal Constitution); *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *cert. denied* 434 U.S. 878, 98 S. Ct. 231, 54 L. Ed. 2d 158 (death penalty statute does not violate 8th or 14th Amendment to U.S. Constitution or state Constitution).

Not only is this appellate claim meritless, we decline Moore's invitation to reconsider our interpretation of § 29-2521.03 and in that regard reaffirm our holding in *Palmer, supra*.

## FINDINGS

In the eighth and final appellate claim, Moore contends that even "if the court finds that the standard of proof is not constitutionally infirm, the sentencing panel committed reversible error by failing to find that the mitigating circumstances approach the weight of the aggravating circumstances in this case."

In order to properly consider this claim, it is necessary to briefly review our capital sentencing procedure. Section 29-2522 requires the sentencing body to proceed as follows:

> After hearing all of the evidence and arguments in the sentencing proceeding, the judge or judges shall fix the sentence at either death or life imprisonment, but such

determination shall be based upon the following consid-
erations:

(1) Whether sufficient aggravating circumstances exist
to justify imposition of a sentence of death;

(2) Whether sufficient mitigating circumstances exist
which approach or exceed the weight given to the aggra-
vating circumstances; or

(3) Whether the sentence of death is excessive or dis-
proportionate to the penalty imposed in similar cases,
considering both the crime and the defendant.

Aggravating circumstances must be proved beyond a rea-
sonable doubt. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433
(1984), *cert. denied* 469 U.S. 1028, 105 S. Ct. 447, 83 L. Ed.
2d 372. But there is no burden of proof with respect to miti-
gating circumstances. *State v. Victor*, 235 Neb. 770, 457
N.W.2d 431 (1990). The State may present evidence that is
probative of the nonexistence of a mitigating circumstance,
while the defendant may present evidence that is probative of
the existence of a statutory or nonstatutory mitigating circum-
stance. *Id*. Although the sentencing authority is not limited to
a consideration of only the statutorily defined mitigating cir-
cumstances, *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33
(1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed.
2d 864, the situation is otherwise with respect to aggravating
circumstances. Section 29-2523(1) exclusively lists the aggra-
vating circumstances which may be relied upon in imposing
the death penalty. In addition to aggravating circumstances
§ 29-2523(1)(b) and (1)(d), discussed previously, they include
aggravating circumstance § 29-2523(1)(a). Aggravating cir-
cumstance § 29-2523(1)(a) reads: "The offender was previ-
ously convicted of another murder or a crime involving the
use or threat of violence to the person, or has a substantial his-
tory of serious assaultive or terrorizing criminal activity."

The mitigating circumstances defined by § 29-2523(2)
include (a) and (g). Mitigating circumstance § 29-2523(2)(a)
reads: "The offender has no significant history of prior crim-
inal activity." Mitigating circumstance § 29-2523(2)(g) pro-
vides: "At the time of the crime, the capacity of the defendant
to appreciate the wrongfulness of his conduct or to conform

his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication."

The resentencing panel found that with regard to the murder of Reuel Eugene Van Ness, Jr., there existed the aggravating circumstances described in § 29-2523(1)(b) and (1)(d) and the mitigating circumstances described in § 29-2523(2)(a) and (2)(g). With regard to the murder of Maynard D. Helgeland, the panel found aggravating circumstances § 29-2523(1)(a), (1)(b), and (1)(d), along with mitigating circumstance § 29-2523(2)(g). The resentencing panel also found that Moore's terrible childhood and severe personality disorder were nonstatutory mitigating circumstances applicable to both murders.

The determination of whether the mitigating circumstances approach or exceed the weight of the aggravating circumstances is not a numerical process, but, rather, involves the reasoned judgment of the sentencing authority. As we explained in *State v. Reeves*, 239 Neb. 419, 426, 476 N.W.2d 829, 836 (1991), *cert. denied* 506 U.S. 837, 113 S. Ct. 114, 121 L. Ed. 2d 71 (1992):

> "The balancing of aggravating circumstances against mitigating circumstances is not merely a matter of number counting but, rather, requires a careful weighing and examination of the various factors. *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986). As we observed in *State v. Stewart*, 197 Neb. 497, 518, 250 N.W.2d 849, 862 (1977), quoting *State v. Dixon*, 283 So. 2d 1 (Fla. 1973): ' "It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present. . . ." ' "

After consideration of the mitigating and aggravating circumstances it had found to exist, the resentencing panel concluded that the mitigating circumstances were not sufficient to

approach or exceed the weight of the aggravating circumstances in either murder and that Moore should therefore be sentenced to death for each of the murders. The panel also determined that the imposition of the death penalty in this case was not excessive or disproportionate to the penalty imposed in similar cases, considering both Moore and the crimes he committed.

Moore alleges that the resentencing panel erred in not finding that the mitigating circumstances were sufficient to approach or exceed the weight of the aggravating circumstances. He challenges not only the panel's factual findings on the aggravating and mitigating circumstances, but its weighing of them as well. We address, in order, Moore's specific claims in this regard.

*Factual Determinations.*

The resentencing panel found that with regard to the Helgeland murder, "aggravating circumstance (1)(a) is clearly applicable beyond a reasonable doubt because the killing of . . . Van Ness four days earlier constitutes a history of assaultive or terrorizing criminal activity which is both 'substantial' and 'serious' . . . ." Moore concedes that the Van Ness murder is certainly indicative of serious assaultive criminal activity, but he maintains that this one incident cannot be described as substantial history of the nature contemplated by aggravating circumstance § 29-2523(1)(a).

He is wrong. As we explained in *State v. Holtan*, 197 Neb. 544, 546, 250 N.W.2d 876, 879 (1977), *cert. denied sub nom.* 434 U.S. 912, 98 S. Ct. 313, 54 L. Ed. 2d 198:

> " 'History' " refers to the individual's past acts preceding the incident for which he is on trial and " 'substantial,' " . . . refers to an actual, material, and important history of acts of terror of a criminal nature. It does not refer to the particular incident involving the homicide for which he is subject to sentence.

Clearly, under this definition, the fact that Moore had killed someone prior to the Helgeland murder is sufficient to establish the existence of aggravating circumstance § 29-2523(1)(a). The resentencing panel properly applied this aggravating cir-

cumstance. See, *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982), *cert. denied* 456 U.S. 984, 102 S. Ct. 2260, 72 L. Ed. 2d 864; *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986), *cert. denied* 484 U.S. 905, 108 S. Ct. 247, 98 L. Ed. 2d 205 (1987).

Second, Moore challenges the resentencing panel's finding that aggravating circumstance § 29-2523(1)(b) was present beyond a reasonable doubt with respect to both murders. The panel based its findings on Moore's confession to police that he had killed the victims so they would not be able to identify him. Moore argues that the panel ignored other evidence which contradicts this account of things, such as that he made admissions concerning his actions in the murders to his brother and girl friend after the killings; that although he wiped his fingerprints from the interior of the cab to avoid detection in the Helgeland murder, there is no evidence that he did so in the Van Ness murder; and that, covered in blood, he walked several blocks from the scene of the Helgeland murder. Moore then directs our attention to passages culled from his confession which he characterizes as "equivocal statements" of his intention to conceal his identity. Brief for appellant at 35.

Based on the foregoing, Moore argues that aggravating circumstance § 29-2523(1)(b) has not been proved beyond a reasonable doubt. We cannot agree. The record establishes beyond a reasonable doubt that Moore murdered both Van Ness and Helgeland to conceal his identity as the perpetrator of a robbery. The evidence cited by Moore is simply too weak to overcome the strong evidence of his confessed intentions. For example, when asked "[t]hen why would you have to shoot him if you were just going to rob [Helgeland,]" Moore replied, "I didn't want him to know me." Similarly, when asked "[h]ow come you planned in mind to shoot [Van Ness] first," Moore replied, "Well I figure the guy probly [sic] get . . . my identification away." Other parts of Moore's confession demonstrate that he viewed killing the victims as an integral part of his ongoing robbery scheme. There can be no doubt that one of Moore's motives for these murders was the

silencing of his victims. Aggravating circumstance § 29-2523(1)(b) clearly applies here.

Third, Moore challenges the resentencing panel's finding that aggravating circumstance § 29-2523(1)(d) existed with respect to both murders. In regard to both murders, the panel found that "[Moore's] cold, calculated planning of each victim's death, as manifested by the purposeful selection of a particular victim on the basis of the specific characteristic of age, establishes the existence of exceptional depravity beyond a reasonable doubt . . . ."

Quoting isolated passages from his confession which he says cast doubt on the theory that he selected his victims on the basis of their age, Moore argues that there is insufficient evidence to sustain a finding that aggravating circumstance § 29-2523(1)(d) exists. Again, he is simply wrong. As the recitation of the circumstances of the murders by Moore demonstrates, there was ample evidence to support beyond a reasonable doubt a finding that Moore planned the victims' deaths and selected his victims on the basis of specific characteristics.

Moore further complains that in order for the exceptional depravity aggravating circumstance to be applied to him, it should be necessary for the prosecution to establish not only that he selected his victims on the basis of age, but also that he had "previously exhibited animosity or hatred for the group." Brief for appellant at 38. Moore misunderstands the definition of exceptional depravity. It is the act of selection, not the duration or nature of the animus toward the characteristic selected, that is the gravamen of this form of the aggravating circumstance.

Moore clearly selected the victims on the basis of the specific characteristic of age so as to make the killings easier on himself.

Thus, the record amply demonstrates that aggravating circumstance § 29-2523(1)(d) is present.

Next, Moore challenges the resentencing panel's finding that mitigating circumstance § 29-2523(2)(a) was not present in the Helgeland murder. Once again, he is wrong. As noted previously, Moore's murder of Van Ness just 4 days earlier

constitutes a significant history of criminal activity for the purposes of mitigating circumstance § 29-2523(2)(a). That being so, it cannot be said that with respect to the Helgeland murder, he had no significant history of prior criminal activity.

Moore does not challenge the resentencing panel's finding that mitigating circumstance § 29-2523(2)(g) existed because he suffered from a mental illness or defect. Rather, Moore argues that the panel should also have found that mitigating circumstance to exist because he was intoxicated from smoking marijuana. But by Moore's own admission, the effects of the marijuana were waning at the time he killed Van Ness. The panel properly rejected Moore's claim in this regard.

*Weighing of Circumstances.*

In addition to considering in mitigation Moore's turbulent childhood and severe personality disorder, as noted earlier, the resentencing panel also considered Moore's good conduct while incarcerated and his expressions of remorse for the killings. However, the panel did not find them to be of much significance. Moore argues that it did not assign enough weight to these nonstatutory mitigating circumstances. He also argues that the panel assigned too much weight to each of the aggravating circumstances.

The U.S. Supreme Court has made clear that "[a] capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." *Tuilaepa v. California,* 512 U.S. 967, 114 S. Ct. 2630, 2638, 129 L. Ed. 2d 750 (1994). It has also emphasized that " 'discretion to evaluate and weigh the circumstances relevant to the particular defendant and the crime he committed' is not impermissible in the capital sentencing process." *Tuilaepa,* 512 U.S. at 979, quoting *McCleskey v. Kemp,* 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987). After proof of at least one aggravating circumstance, the sentencing authority under our capital sentencing scheme is granted the discretion to determine the weight to be given to aggravating and mitigating circumstances and make " 'a reasoned judgment as to what factual situations require the imposition of death and which can be

satisfied by life imprisonment in light of the totality of the circumstances present. . . .' " *State v. Stewart,* 197 Neb. 497, 518, 250 N.W.2d 849, 862 (1977), quoting *State v. Dixon,* 283 So. 2d 1 (Fla. 1973). Thus, we need not inquire into the weight given to a particular aggravating or mitigating circumstance by the resentencing panel, and we decline to do so.

Based upon our independent examination of the aggravating and mitigating circumstances, we conclude that the aggravating circumstances proven to exist far outweigh the mitigating circumstances and that therefore the imposition of the death penalty is appropriate. In each case, sufficient aggravating circumstances existed to justify the imposition of a death sentence, and the mitigating circumstances did not approach or exceed the aggravating circumstances.

*Sentence Comparisons.*

The proportionality review we are to make under § 29-2521.03 requires that we determine the propriety of the death sentence by comparing the sentence under review with previous cases involving the same or similar circumstances, which thus ensures that no sentence imposed shall be greater than those imposed in other cases with the same or similar circumstances, and that the review should include only those cases in which the death penalty was actually imposed. See, *State v. Joubert,* 224 Neb. 411, 399 N.W.2d 237 (1986), *cert. denied* 484 U.S. 905, 108 S. Ct. 247, 98 L. Ed. 2d 205 (1987); *State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986), *cert. denied* 484 U.S. 872, 108 S. Ct. 206, 98 L. Ed. 2d 157 (1987).

After comparing the facts and circumstances of this case with those of all the applicable cases in which the death penalty was imposed, as required by *Palmer,* we find that the sentences imposed in this case are no greater than nor disproportionate to the sentences imposed in any other case with the same or similar circumstances.

*Resolution.*

Consequently, this appellate claim, like those which preceded it, fails.

## CONCLUSION

All of the appellate claims being without merit, we affirm the sentences of death imposed by the resentencing panel.

AFFIRMED.