On Return from Remand
Lavon Guthrie, alias Colon Lavon Guthrie, was convicted of the capital murder of Rayford Howard. See § 13A-4-40(a)(2), Code of Alabama 1975 (murder during the course of a robbery or attempt thereof), and was sentenced to death. In Guthrie v.State, 689 So.2d 935 (Ala.Cr.App. 1996), we affirmed Guthrie's conviction. However, we remanded the cause to the trial court for resentencing, because the original sentencing order was ambiguous on the issue whether the trial court found the existence of any nonstatutory mitigating circumstances. We also found the presentence report to be wanting; therefore, we instructed the trial court to order an updated presentence report and to conduct a new sentencing hearing pursuant to §13A-5-47, Code of Alabama 1975. The trial court has promptly complied with our instructions and, for reasons discussed below, the trial court's order that Guthrie be sentenced to death is due to be affirmed. *Page 950 
In response to our instructions, the trial court ordered a new presentence report. That report has been prepared and is dated February 23, 1996. Both Guthrie and his counsel received a copy of it in advance of the new sentencing hearing. The new presentence report persuades us that the investigator made a good faith effort to unearth available facts regarding Guthrie and his background that might prove relevant to the issue whether the sentence of death is appropriate in this case. This presentence report contains a psychological profile of Guthrie completed in 1988, which was prepared while he was incarcerated at the Taylor Hardin Secure Mental Facility. That report showed that Guthrie suffered from alcohol abuse, depression, and anxiety, that he exhibited antisocial behavior, and that he claimed to have had hallucinations. Statements by Guthrie's mother and by a cousin[1] with whom Guthrie lived as a child were also presented to the trial court. These statements suggest that Guthrie did not have a violent childhood.
On March 14, 1996, the trial court conducted a new sentencing hearing, at which Guthrie's counsel and the prosecutor presented evidence and argued the existence of, and weight to be accorded, aggravating and mitigating circumstances. After the hearing, the trial court entered specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49 and each mitigating circumstance specified in § 13A-5-51, and any mitigating circumstance existing under § 13A-5-52. In addition, it made specific written findings of fact summarizing the crime and Guthrie's participation in it, as required by § 13A-5-47(d). In its findings of fact, the trial court found the following aggravating circumstances: (1) that Guthrie had previously been convicted of a felony involving the use of or threat of violence to the person, i.e., first degree assault (§13A-5-49(2)); and (2) that the capital offense was committed while Guthrie was engaged in or was an accomplice in the commission of, or an attempt to commit, or flight after committing, a robbery (§ 13A-5-49(4) and § 13A-5-50). The trial court examined the evidence for mitigating circumstances, pursuant to §§ 13A-5-51 and -52. It specifically found none of the mitigating circumstances specified in § 13A-5-51 to exist. In regard to any nonstatutory mitigating circumstances under §13A-5-52, the trial court found as follows:
 "This examination reveals only that the family life of the defendant as he was growing up was not all that it could have been. He dropped out of school in the ninth grade and seems to have been in and [out] of minor trouble with the law throughout his youth. One of his siblings died from a gunshot wound and another was killed in an automobile accident. He has, in the past, abused alcohol. The Court has considered these matters as non-statutory mitigating circumstances."
Thus, the trial court found the existence of two aggravating circumstances and one non-statutory mitigating circumstance.
In addition to considering the evidence offered at the guilt phase and the sentencing phases, the trial court considered the presentence report with the jury's advisory verdict of death. Upon weighing the aggravating circumstances and the mitigating circumstance, and finding that the aggravating circumstances outweighed the mitigating circumstance, the trial court sentenced Guthrie to death.
In accordance with Ala.R.App.P. 45A, we have examined the record in this case for any plain error, whether or not brought to our attention or to the attention of the trial court. We have found no "plain error or defect in the proceedings," either in the guilt phase or in the sentencing phases of the trial.
We have also reviewed Guthrie's sentence pursuant to §13A-5-53, which requires that, in addition to reviewing the case for any error involving the conviction, we also review the propriety of the death sentence. This review must include a determination of the following: (1) whether any error adversely affecting Guthrie's rights was made in the sentence proceedings; (2) whether the trial court's findings concerning *Page 951 
the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the appropriate sentence, we determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by this court of the aggravating and mitigating circumstances indicates that death is the proper sentence; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and Guthrie.
We take judicial notice that crimes similar to the crime committed by Guthrie in the instant case are being punished capitally throughout this state. See, e.g., Bush v. State, [Ms. CR-90-1652, December 1, 1995] ___ So.2d ___ (Ala.Cr.App. 1995);Kuenzel v. State, 577 So.2d 474, 481-82 (Ala.Cr.App. 1990),aff'd, 577 So.2d 531 (Ala. 1991); and Hinton v. State,548 So.2d 547 (Ala.Cr.App. 1988), aff'd, 548 So.2d 562 (Ala. 1989),cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383
(1989). In fact, the Alabama Supreme Court has found that two-thirds of Alabama's death sentences have been imposed on defendants convicted of capital murder arising out of robbery-murders. Beck v. State, 396 So.2d 645, 654 n. 5 (Ala. 1980)
We have carefully searched the record of both the guilt and the sentence phases of Guthrie's trial, and we have found no error warranting reversal. In reviewing the sentence, we find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. The findings and conclusions of the trial court are supported by the evidence. We concur in the judgment of the trial court that death is the appropriate sentence in this case. Our independent weighing of the aggravating circumstances and the mitigating circumstance convinces us that the sentence of death is appropriate for Guthrie. Considering the crime committed and considering Guthrie, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases.
Guthrie's conviction has been previously affirmed by this court. Likewise, his sentence of death is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] This cousin testified for the prosecution during the guilt phase of Guthrie's trial.