FOR PUBLICATION

FILED

December 1, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

STATE OF TENNESSEE            (
                             (
    Appellee,                (  Shelby County
                             (
                             (  Hon. Arthur T. Bennett,
v.                           (  Judge
                             (
                             (  S. Ct. No. 02S01-9603-CR-00032
ANDRE S. BLAND,              (
                             (
    Appellant.               (

**CONCURRING AND DISSENTING OPINION**

The issues before the Court are sufficiency of the

evidence and comparative proportionality of the sentence of death.

I agree with the majority that the evidence is sufficient to

support the jury's finding of premeditation, that the evidence is

sufficient to support the jury's finding of torture (i.e. the

"infliction of severe physical or mental pain upon the victim while

he or she remains conscious"), and that the aggravating

circumstance outweighs the mitigating circumstances.  However, I

would find that the sentence of death is disproportionate.

As stated by the majority, the United States Supreme

Court held in Pully v. Harris, 465 U.S. 37, 104 S. Ct. 871 (1984),

that comparative proportionality review is not required by the

Eighth Amendment in every capital case.  Majority Opinion at _____

[slip op. at p. 19]. That, however, does not dispose of the constitutional issues. The Eighth Amendment requires a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." See Furman v. Georgia, 408 U.S. 238, 313, 92 S. Ct. 2726, 2764 (1972) (White, J., concurring). In Tennessee, an essential aspect of that "meaningful basis" required by the United States Constitution is the proportionality review mandated by Tenn. Code Ann. § 39-13-206(c)(1)(D). Under Tennessee law, "prosecutors may indict and juries may convict on proof of reckless indifference, leaving the constitutional requirement for narrowing to appellate review." State v. Middlebrooks, 840 S.W.2d 317, 354 (Tenn. 1992) (Reid, C.J., and Daughtrey, J., concurring in part and dissenting in part). "[C]ase specific proportionality review . . . ensures that the dictates of the Eighth and Fourteenth Amendments and their state counterparts, Article I, §§ 16 and 18, are met in capital felony murders." Id. at 350 (Drowota, J., concurring and dissenting). "[T]his Court, able to consider not just individual cases but the spectrum of sentences in cases statewide, is charged with guarding against arbitrary, capricious, and freakish imposition of capital punishment." State v. Harris, 839 S.W.2d 54, 84 (Tenn. 1992) (Reid, C.J., and Daughtrey, J., dissenting).

In addition to the requirements of the Eighth Amendment and Article I, Section 16 , constitutional due process requires a rational and consistent imposition of the death sentence. See, e.g., Harris v. Blodgett, 853 F. Supp. 1239, 1291 (1994). Where

the State provides for a system of appellate review, that procedure must conform with basic requirements of due process. See Herrera v. Collins, 506 U.S. 390, 408, 113 S. Ct. 853, 864 (1993).

Consequently, only an effective procedure for performing a comparative proportionality review will satisfy the statute as well as the state and federal constitutions.

As noted by the majority, beginning with State v. Harris, 839 S.W.2d 54, 84 (Tenn. 1992) (C.J. Reid, dissenting), and continuing over the intervening five years, I have criticized the Court for failing "to articulate and apply a standard for comparative proportionality review of the death sentence. . . ." In Harris, I urged the Court to "develop and apply objective criteria and procedures for comparing all first degree murder cases and in each capital case expressly analyze those features showing it to be similar to or different from other first degree murders." Id. at 85. The proportionality review procedure outlined by the majority in this case answers many of the problems raised in these prior decisions. The majority sets a course which could develop into a procedure which complies with the statute and the constitutions.[1]

---

[1]Notwithstanding the majority's somewhat shrill and self-conscious response to the dissent in this and prior cases, majority opinion, p. 28-30, the dissents in the present case prompted a revision of the majority opinion and expansion of the proportionality analysis to 25 pages. The procedure for accomplishing the proportionality review articulated in this decision for the first time is not discernible in the conclusory, prefunctory statements made in the prior cases. Since the Court has not found any of the 116 sentences of death disproportionate under the statute, whether the procedure announced will produce more than the routine affirmation of jury verdicts accompanied by praise of the procedure remains to be seen.

After discussing the "two basic approaches to statutory comparative proportionality review," the majority rejects the "frequency method" as being "unworkable" and adopts the "precedent-seeking method," as a reliable means "to identify and invalidate" disproportionate sentences of death.[2] Majority Opinion at _____ [slip op. at pp. 20-22]. The majority states that this method will accomplish the purpose of comparative proportionality - "insure[] rationality and consistency in the imposition of the death penalty." Majority opinion at _____ [slip op. at p. 22].

The cases to be compared in determining rationality and consistency in the sentence of each case under review, as announced by the majority, will be "cases in which a capital sentencing hearing was actually conducted to determine whether the sentence should be life imprisonment, life imprisonment without the possibility of parole, or death by electrocution, regardless of the sentence actually imposed." Majority opinion at _____ [slip op. at p. 24]. It should be noted that this category of "similar cases" is different and smaller than the "universe" of all cases in which the accused has been convicted of first degree murder, as

---

[2]The frequency method as the sole means of determining proportionality, has not been adopted in any jurisdiction, though Missouri, New Jersey, Pennsylvania, and Virginia have utilized systematic methods of recording certain factors for comparison. These methods of statistical comparisons are used by those courts in conjunction with the court's general comparison of the crime and the defendant to other cases under the precedent-seeking approach. See e.g. State v. DiFrisco, 662 A.2d 442 (N.J. 1995). The majority insists that the Court has used the "precedent seeking method" since the enactment of Tenn. Code Ann. § 39-2406 in 1977. However, the name of the method gives little insight into the effectiveness of the procedure actually followed. Some states which employ the precedent-seeking method perform effective reviews, see e.g., Lawrie v. State, 643 A.2d 1336 (Del. 1994); State v. Pirtle, 904 P.2d 245 (Wash. 1995), while others are like Tennessee, perfunctory at best. See, e.g., Guthrie v. State, 689 So. 2d 948 (Ala. Crim. App. 1996); State v. Moore, 553 N.W.2d 120 (Neb. 1996).

contemplated by Rule 12. See Tenn. Sup. Ct. R. 12. I share the concerns expressed by Justice Birch in his separate dissent on this point.

The Court then, for the first time,[3] enumerates factors determined to be "relevant to identifying similar cases [for] conducting proportionality review." Majority Opinion at _____ [slip op. at p. 25]. The Court states that the enumeration is not exhaustive and invites, even requires, that counsel for the parties identify other factors and cases deemed relevant to the proportionality inquiry. Majority opinion at _____ [slip op. at p. 26]. This provides counsel a framework within which to address proportionality.

The Court thus has taken an important first step in articulating a structured review process for determining if a sentence of death is disproportionate to the penalty imposed in similar cases.

However, there appears to be some lack of consistency in the standard for determining if a sentence of death is disproportionate. The Court acknowledges that this case is not as "atrocious" as some cases in which the sentence of death has been imposed, and also that the case is not as "atrocious" as some cases in which the sentence of life imprisonment was imposed, but finds

_____

[3]This is the 116th capital case governed by a statute (Tenn. Code Ann. § 39-2406 (1977) (currently codified at Tenn. Code Ann. § 39-13-206(c)(1)(D) (Supp. 1996)) requiring comparative proportionality review.

these conclusions to be of no significance in determining if the sentence is disproportionate. Majority opinion at _____ [slip op. at p. 29]. The majority states: "Even if a defendant receives a death sentence when the circumstances of the offense are similar to those of an offense for which a defendant has received a life sentence, the death sentence is not disproportionate where the Court can discern some basis for the lesser sentence." Majority opinion at _____ [slip op. at pp. 22-23]. The majority states again: "unless, the case taken as a whole is plainly lacking in circumstances consistent with those in similar cases where the death penalty has been imposed [the sentence is not disproportionate]." Majority opinion at _____ [slip op. at p. 28]. The standard based on these statements seems to be that the sentence of death is disproportionate if the determinative factors are not "consistent" with those in cases in which death has been imposed. But the majority also states: "Moreover, where there is no discernible basis for the difference in sentencing, the death sentence is not necessarily disproportionate." Majority opinion at _____ [slip op. at p. 23]. Based on its analysis of cases in which the sentence of death has been imposed and those in which it was not imposed, it appears the majority is requiring "many similarities" with cases in which death was the sentence. Majority opinion at _____ [slip op. at p. 38].

Application of the identifying factors announced by the Court to the circumstances of the crime and to the character of the defendant does not show this to be one of the few cases in which

the sentence of death should be imposed.[4]  The first identifying factor listed by the Court is the means of death.  In this case, the means of death was a handgun, undoubtedly the most commonly used instrument of homicide.  Use of this weapon does not weigh for or against culpability.  The manner of death was several shots into the victim's leg inflicting injuries which caused him to bleed to death in approximately 15 minutes after losing consciousness in about five minutes.  Based on their verdict of premeditation and torture, the jury apparently concluded that the defendant intentionally shot the victim several times in one leg with the expectation that he would suffer as he died.  This means of death and the duration of suffering is not extraordinary.  The motivation for the shooting is not entirely clear.  So far as the record reflects, the defendant and the victim were strangers to each other.  The defendant obviously took offense to the victim's inquiry as to why the defendant and others were trying to extricate another stranger from a locked car.  This apparently was the provocation for the offense, as there is no other reasonable explanation for the shooting.  The place of death was the parking lot of an apartment complex in South Memphis, a location at which unlawful activity, including drug dealing, dice games, robbery,

_____

[4]The factors to be considered under the majority opinion are the aggravating and mitigating circumstances, the means of death, the manner of death, the motivation for the killing, the lace of death, the similarity of the victims' circumstances including age, physical and mental conditions, the victims' treatment during the killing, the absence or presence of premeditation, the absence or presence of provocation, the absence or presence of justification, the injury to and effects on nondecedent victims, the defendant's prior criminal record or prior criminal activity, the defendant's age, race, and gender, the defendant's mental, emotional or physical condition, the defendant's involvement or role in the murder, the defendant's cooperation with authorities, the defendant's remorse, the defendant's knowledge of helplessness of victim(s), and the defendant's capacity for rehabilitation.  Majority opinion at _____ [slip op. at pp. 25-26].

assault, and public drunkenness, was not unexpected and at which the victim could reasonably expect the possibility of violence. The victim was a young adult with no remarkable physical or mental conditions. The jury found premeditation. There obviously was no justification for the crime.

The defendant had committed some serious offenses as a juvenile but had no criminal record as an adult. He was a 19-year-old male at the time the offense was committed. There is no evidence of the defendant's mental or emotional conditions beyond that evidenced by his criminal acts. His physical condition does not appear in the record, other than he was able to fire the weapon and run at a moderate rate of speed. The defendant was the sole perpetrator of the offense. He voluntarily surrendered to the police and gave a full statement of the events which transpired at the time the offenses were committed. He had full knowledge that when the final shots were fired the victim was completely helpless. However, he insisted at trial that he did not intend to kill the victim. The evidence would suggest that the defendant might be rehabilitated, though there is little direct evidence on that issue.

This proof shows that the defendant is not a productive citizen, that he was engaged in the common though illegal business of drugs, that he is capable of precipitous deadly violence, and that he, in short, is a symptom as well as an instrument of a violent society.

However, this proof assessed according to the majority's identifying factors does not demonstrate that the defendant is among the worst murderers. Although every murder is morally reprehensible and socially destructive, the proof does not show this defendant "to possess the characteristics <u>most</u> repulsive to society's sense of decency, and <u>most</u> destructive to the very fabric of society." <u>State v. Howell</u>, 868 S.W.2d 238, 272 (Tenn. 1993) (Reid, J., concurring). The facts and circumstances of the "comparable" cases relied upon by the majority are significantly more egregious than in this case. In <u>State v. Van Tran</u>, 864 S.W.2d 465 (Tenn. 1993), the elderly victim was killed execution-style. In both <u>State v. McNish</u>, 727 S.W.2d 490 (Tenn. 1987), and <u>State v. Barber</u>, 753 S.W.2d 659 (Tenn. 1988), the elderly victims were killed with multiple blows to their heads. In <u>State v. Henley</u>, 774 S.W.2d 908 (Tenn. 1989), the victims, an elderly couple, were shot. The husband was killed, but the wife was still alive when the defendant poured gasoline on her and set the house on fire. She died of burns and smoke inhalation. In the present case, the twenty-year-old victim was shot in the leg. The manner of death and age of the victims in <u>Van Tran</u>, <u>McNish</u>, <u>Barber</u>, and <u>Henley</u> are clearly distinguishable. In <u>State v. Cooper</u>, 718 S.W.2d 256 (Tenn. 1986), the defendant had threatened and stalked the victim, his wife, for some time before the murder. In the present case, the victim was killed when he apparently interrupted a robbery in progress. The motivation for the killing in <u>Cooper</u> is distinguishable. In <u>State v. Taylor</u>, 771 S.W.2d 387 (Tenn. 1989), the defendant, while incarcerated, killed a guard with a knife.

-9-

The death sentence was imposed based on four aggravating circumstances: the defendant was previously convicted of one or more violent felonies; the murder was especially heinous, atrocious or cruel; the defendant was in lawful confinement when he committed the murder; and the victim was a corrections employee. Tenn. Code Ann. § 39-2-203(i)(2), (5), (8), & (9) (1982) (repealed). In the present case, the jury found only one aggravating circumstance: the murder was especially heinous, atrocious or cruel. Tenn. Code Ann. § 39-13-204(i)(5) (1991). The nature of the crime in <u>Taylor</u>, as reflected in the aggravating circumstances supporting the death penalty, are unquestionably distinguishable.

Citing <u>State v. Ramsey</u>, 864 S.W.2d 320, 328 (Mo. banc 1993), the majority holds that "[i]f the case, taken as a whole, is plainly lacking in circumstances consistent with those in similar cases in which the death penalty has been imposed, the sentence of death in the case being reviewed is disproportionate." Majority Opinion at _____ [slip op. at 22, lines 18-21]. Applying that standard, the sentence of death in this case is disproportionate.

Notwithstanding the majority's attempt to distinguish the cases it reviewed in which the jury declined to impose the death penalty, those cases share more similarities than differences with the present case. As in this case, there was nothing extraordinary about the manner of death, the motivation for the killing, or the victims' circumstances, and the defendants were young and had minor prior criminal records.

The circumstances of this case are consistent with those similar cases in which the sentence was life imprisonment or life without parole.  Consideration of the identifying factors provided by the majority point to three specific similar life cases involving a senseless killing (with nothing unusual about the manner of death) of a victim who had no prior relationship with the defendant and who was not particularly vulnerable because of age or disability.  In two of the cases, the State did not even seek the death penalty.

In State v. William Darnell Christian, [NO NUMBER IN ORIGINAL], (Tenn. Crim. App., at Nashville, Apr. 28, 1989, app. denied (Tenn. Aug. 7, 1989), the 21-year-old defendant shot the 26-year-old victim after a minor altercation at a nightclub.  The defendant's brother became upset when the victim asked him to move because he was blocking the victim's wife's view of the stage.  Later, when the victim and his wife were dancing, the defendant stood beside them and pushed the victim.  After the victim pushed back, the defendant pulled out an automatic pistol and shot the victim in the chest.  The victim was unarmed.  The defendant had three prior convictions:  rape, second degree burglary, and burglary of an auto.  The defendant had an eleventh grade education and there was no evidence of psychological problems.  The defendant was drinking at the time of the offense.  The defendant was convicted of premeditated first degree murder.  The State did not seek the death penalty.

In State v. Jack Layne Benson, Bedford Circuit No. 13964 (Nov. 12, 1996), the 31-year-old defendant robbed the 20-year-old victim of his wallet and then stabbed him multiple times in the chest. The defendant had several prior convictions, including aggravated burglary, receiving stolen property, carrying a concealed weapon, and possession of drugs. The defendant had an eleventh grade education and there was no evidence of psychological problems. The defendant had a history of drug and alcohol abuse, but there was no evidence that he was under the influence during the killing. The defendant was convicted of felony murder and especially aggravated robbery. The State did not seek the death penalty.

In the third case, State v. Torrance Johnson, Shelby County Criminal Court [NO CASE NUMBER ON RULE 12 REPORT](Sentence imposed Jan. 11, 1997), the 44-year-old victim was shot in the chest and throat while she was at an ATM. The jury found as the only aggravating circumstance that the defendant had prior convictions. However, the Rule 12 report also indicates that the mitigating circumstance of no significant prior criminal history was raised by the evidence. There was no evidence that the defendant was under the influence of drugs or alcohol at the time of the offense. There was no co-defendant. There is no data concerning the defendant. Apparently, the report was mixed up with another one because the defendant data refers to a different person. It is unclear from the Rule 12 report whether the defendant was convicted of premeditated or felony murder. The

State sought the death penalty, but the jury imposed a sentence of life without the possibility of parole.

I would find that the proof in this case does not show that the sentence of death is not disproportionate to the penalty imposed in similar cases, considering the nature of the crime and the defendant.  I would therefore remand the case to the trial court for the imposition of a sentence of life imprisonment or life imprisonment without parole.

_____
Reid, J.